# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**S.C. JOHNSON & SON, INC., and CONSULTORIA TÉCNICA E REPRESENTAÇÕES, LDA,**
    *Plaintiffs*,

vs.

**THE DIAL CORPORATION,**

    *Defendant*.

**Case No. 08 CV 4696**
**Judge Charles R. Norgle**
**W.D. Wis. Case No. 07-C-0689-C**

---

### S.C. JOHNSON & SON'S RESPONSE TO THIRD PARTY SARA LEE CORPORATION'S MOTION TO QUASH 30(b)(6) SUBPOENA

---

S.C. Johnson & Son, Inc. and Consultoria Técnica E Representações, LDA (collectively "S.C. Johnson"), plaintiffs in the underlying patent litigation pending in the United States District Court for the Western District of Wisconsin, Judge Crabb presiding ("underlying action"), submit this memorandum in response to Sara Lee Corporation's ("Sara Lee") Motion to Quash the Rule 30(b)(6) subpoena issued by the Court and served on Sara Lee.

## BACKGROUND

Even though Sara Lee attempts to paint itself as a separate and utterly disinterested entity to underlying action, it most certainly is not. Sara Lee Household & Bodycare España SL ("Sara Lee España") licensed to the defendant in the underlying action, the Dial Corporation ("Dial"), the technology now used in Dial's Renuzit® TriScents™ air

fresheners.  The complaint alleges that the sale of TriScents infringes U.S. Patent No. 6,487,367 ("'367 patent"), and is the subject of the lawsuit in the Western District of Wisconsin between S.C. Johnson and Dial.[1]  Through a Rule 45 subpoena, S.C. Johnson noticed a 30(b)(6) deposition in order to ascertain what Sara Lee and its subsidiaries knew about the '367 patent and Sara Lee and its subsidiaries' relationship with Dial.[2]

Sara Lee España manufactures and sells in Europe a so-called "3volution"™ air freshener product that dispenses fragrance through an alternating heat-driven dispensing system that, if imported into the United States, would infringe the S.C. Johnson '367 patent.  Rather than selling the product directly in the United States, however, Sara Lee España chose instead to manufacture the device in Europe and award Dial an exclusive license to import and sell it in the United States under Dial's Renuzit brand, under the TriScents name.

S.C. Johnson and Consultoria Técnica E Representações, LDA ("CTR") have good grounds to believe that Sara Lee España not only was aware of the '367 patent before it introduced its 3volution product, but made use of CTR's actual design in manufacturing the 3volution product.  Representatives of Sara Lee not only met with CTR's principal, the inventor of the '367 patent, approximately one year before introducing its "3volution" product in Europe, but actually went to CTR's factory in

---

[1] Consultoria Técnica E Representações, LDA is the assignee of U.S. Patent No. 6,487,367, which is exclusively licensed to S.C. Johnson.

[2] The full text of the noticed topics is contained in Schedule A to the subpoena, included as Exhibit A to Sara Lee's Motion to Quash 30(b)(6) Subpoena.

2

Lisbon, Portugal to learn about CTR's design.  *See* Declaration of Pedro Queiroz Vieira at pp. 7-10, served as part of an expert report in the underlying action and attached hereto as Exhibit A ("Vieria Declaration").  As detailed in the Vieria Declaration, it was initially a representative of Sara Lee Household & Body Care International BV of the United Kingdom, not just Sara Lee España, that contacted CTR.[3]  *See id.* at ¶24.

Discovery of the facts relating to the issues identified in the 30(b)(6) notice will be relevant to issues in dispute in the underlying action, such as secondary indicia of nonobviousness, copying, and, possibly, willfull infringement—to the extent that Sara Lee's development activities were known or can be imputed to Dial.  Moreover, and in any event, it is undisputed that Sara Lee benefits directly from Sara Lee España's license agreement with Dial.  Sara Lee España is a subsidiary of Sara Lee.  Sara Lee, Annual Report (Form 10-K), at Ex. 21(Aug.t 29, 2007) (attached hereto as Exhibit B).  Sara Lee España's profits are included in Sara Lee's filings with the Securities and Exchange Commission, and the entire Household and Body Care branch of Sara Lee, including Sara Lee España, has contributed to Sara Lee's growth through, among other things, "strong

---

[3] Sara Lee is careful not to list specifically who owns Sara Lee España, noting just that it is part of a "vast family of well over 200 legal entities, including [Sara Lee España] and various entities that have direct ownership interests in [Sara Lee España]."  Sara Lee Memorandum in Support of its Motion at p.4.  In fact, as far as S.C. Johnson can tell, every entity, including Sara Lee, that owns any part of Sara Lee España starts with the words "Sara Lee."  Indeed, the members on the boards of directors of some of those entities sit on the boards of the other Sara Lee entities in the same chain.  Regardless of whether one legal entity sits in between Sara Lee and Sara Lee España—or twenty—the fact is that Sara Lee exerts more-than-sufficient control over its corporate subsidiary to require it to designate someone in the "vast family" to speak to the noticed topics.

unit volumes in air care," particularly in Europe.  Sara Lee, Press Release attached as Exhibit 99 to Form 8-K (Aug. 7, 2008) (attached hereto as Exhibit C).  Sara Lee has and will continue to benefit directly and tangibly from its ownership of Sara Lee España.

Finally, Sara Lee exerts substantial control over all of its subsidiaries.  For example, Sara Lee has restructured its European divisions, *see* Sara Lee, Press Release attached to Form 8-K as exhibit 21 (June 6, 1994) (attached hereto as Exhibit D), and in this case Sara Lee has produced documents from its subsidiary Sara Lee España.  *See* Sara Lee's Memorandum at p.2.

## ARGUMENT

Because the information sought by S.C. Johnson's 30(b)(6) notice is "reasonably available" to Sara Lee, the subpoena is not "unduly burdensome" under Federal Rule of Civil Procedure 45(c)(3)(A)(iv).[4]  Sara Lee bears the burden of establishing that one of the grounds for quashing a subpoena has been satisfied, *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 993 (7th Cir. 2002), and it has not done so here.

Despite its efforts to recast the operative question in terms of whether an employee of Sara Lee knows about the day-to-day operations of Sara Lee España, the issue is whether the information is "reasonably available" to Sara Lee under Federal Rule of Civil

---

[4] The only other ground Sara Lee presents for objecting under Rule 45 is under sub.(c)(3)(A)(iii), which deals with disclosure of privileged materials.  Since S.C. Johnson is not seeking communications that are properly designated as privileged, this objection is unfounded.  In any event, Sara Lee's bald assertions of privilege are inadequate to justify quashing a subpoena.  *See Stock v. Integrated Health Plan, Inc.*, 241 F.R.D. 618, 622 & 622 n.3 (S.D. Ill. 2007).

Procedure 30(b)(6).  It is, and therefore it is not unduly burdensome under Federal Rule

of Civil Procedure 45(c)(3)(A)(iv) for Sara Lee to designate individual(s) to speak on the

noticed topics.

### The Information Is "Reasonably Available" To Sara Lee

Sara Lee ignores the plain language of Rule 30(b)(6) and the Advisory Committee

Notes when it contends that the information detailed in S.C. Johnson's 30(b)(6)

deposition topics is not "reasonably available" to it.  Multiple times Sara Lee asserts it

does not have an "employee" that has the knowledge, and that it would be too difficult

for them to get someone up to speed.  Sara Lee Memorandum at p.6 ("Plaintiffs want

Sara Lee Corp. to designate one of its own employees . . . .").  That the individual

designated in response to a 30(b)(6) notice be an "employee" of Sara Lee is simply not a

requirement under Rule 30(b)(6).  Indeed, the Rule explicitly states otherwise: "The

named organization must then designate one or more officers, directors, or managing

agents, *or designate other persons who consent to testify on its behalf* . . . ."  Fed. R. Civ.

P. 30(b)(6) (emphasis added).  The Advisory Committee Notes on Rule 30 add to the

plain language of Rule 30(b)(6), namely, that Sara Lee can designate one or more

individuals from Sara Lee España (or anywhere else) to speak to the noticed topics: "The

organization may designate persons other than officers, directors, and managing agents."

Others have noted the clear import of this clause in 30(b)(6): "The representative does not

have to be an officer or director of the organization, *and in fact does not even need to be*

*employed by the organization*.  Instead, the company has a duty to make a conscientious,

good-faith effort to designate a knowledgeable representative."  Baicker-McKee, Janssen

& Corr, *Federal Civil Rules Handbook*, Author's Commentary to Rule 30(b)(6) at p.710 (West 2008). All Sara Lee has done here is to look around the room, decide that no one employed and sitting in that room can speak to the topics based on personal knowledge, and left it at that. The Rules require more.

Indeed, conspicuously absent from Sara Lee's motion and supporting affidavit is any assertion that Sara Lee lacks the ability to designate individuals employed by their subsidiaries in response to S.C. Johnson's 30(b)(6) notice, whether they be from Sara Lee España, or one of the other members of Sara Lee's "vast family." The Rules do not stand in their way; S.C. Johnson has offered to pay the travel-related expenses for anyone they choose to designate; and unlike what happens in the real world of parenting, the parent here—Sara Lee—most certainly has the ability to control its child(ren).

As discussed above, Sara Lee counts the money earned by its subsidiaries when it files its reports with the SEC, and in the past Sara Lee has ordered the structuring and business decisions of its European subsidiaries. Sara Lee, Press Release attached to Form 8-K as exhibit 21 (June 6, 1994) (attached hereto as Exhibit D). But one need look no further than this case to appreciate the extent of Sara Lee's control. In response to S.C. Johnson's document subpoena in February, Sara Lee had no problem getting documents from Sara Lee España. Sara Lee cannot now contend that it is without the ability to request the presence of one of its subsidiaries' employees for a deposition on an issue that

directly benefits Sara Lee (and that it must, under the penalty of law, represent in its SEC filings).[5]

Appreciating that control is indeed an issue in understanding whether information is "reasonably available" to a corporation, the court in *Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*, No. 01 CIV 3016(AGS)(HB), 2002 WL 1835439 (S.D.N.Y. Aug. 8, 2002), held that "if the [corporate] subsidiaries and affiliates are within its control," the parent corporation must designate a 30(b)(6) deponent. *Id.* at *2. The court went further, stating that logically, the discovery vehicle does not matter: the respondent "should be obligated to produce the information under its control. Application of this principle to Rule 30(b)(6) discovery is . . . consistent with the purpose of discovery— '[to] make a trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.'" *Id.* at *4 (quoting *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958)). So too here.

Sara Lee's reliance on *In re Ski Train Fire of November 11, 2000 Kaprun Austria*, No. MDL 1428(SAS)(THK), 2006 WL 1328259 (S.D.N.Y. May 16, 2006), is misplaced for the same reason that its own argument must fail: the case fails to recognize that the

---

[5] That S.C. Johnson wants to depose two current and two former employees of Sara Lee España is a red herring. It has not done so yet, and without cooperation from Sara Lee, may never be able to do so as Sara Lee has, on Sara Lee España's behalf, insisted that international letters rogatory will be required. Regardless, whether or not S.C. Johnson seeks to depose these four individuals—in their individual capacity— simply has no bearing on whether the current subpoena is "unduly burdensome." And, in any event, S.C. Johnson will accommodate any and all reasonable requests to avoid repetitive or unnecessary depositions.

plain language of Rule 30(b)(6) does not restrict 30(b)(6) designees to only current "employees." *Id.* at \*9. Remarkably, in disagreeing with *Twentieth Century Fox* court, the court in *In re Ski Train Fire*, fails to cite a single authority for its proposition that a corporate parent is not allowed to designate employees of its subsidiaries in response to a 30(b)(6) notice, and in doing so it ignores the plain text of Rule 30(b)(6).

Because Rule 30(b)(6) allows Sara Lee to designate anyone it wants within its corporate chain that has the requisite information—not just an employee of Sara Lee with personal knowledge—that information is "reasonably available" to Sara Lee.

### There Is No "Undue Burden" On Sara Lee

"A subpoena will survive a motion to quash when[, as here,] it designates topics that are reasonably calculated to lead to admissible evidence." *Stock v. Integrated Health Plan, Inc.*, 241 F.R.D. 618, 621 (S.D. Ill. 2007).[6] In order to quash the subpoena at issue here, Sara Lee must establish that one of four enumerated and exclusive situations exist. The only operative subsection asserted by Sara Lee is Rule 45(c)(3)(A)(iv), which allows a court to modify or quash as subpoena if it "subjects a person to undue burden." It is not enough that compliance with the subpoena be burdensome, it must be "undue." *Ligas v. Maram*, No. 05 C 4331, 2007 WL 4225459, at \*4 (N.D. Ill. Nov. 27, 2007) (Ashman, J.). Here, there is no undue burden, particularly for an international entity like Sara Lee.

---

[6] Modifying a subpoena is preferred to quashing the subpoena. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

S.C. Johnson has also already offered to pay for the travel expenses of anyone Sara Lee designates in response to the 30(b)(6) notice, and S.C. Johnson is not asking witnesses to travel any further than they would for a meeting at their parent's corporate headquarters. The information sought is highly relevant—not just to Sara Lee who benefits financially from Sara Lee España's exclusive license with Dial—but to the pending patent infringement case in the Western District of Wisconsin. Therefore, the subpoena is not unduly burdensome.

Finally, this Court should not reward corporate obstruction. The facts proffered in the Vieria Declaration demonstrate that Sara Lee's foreign subsidiary is in possession of facts that are directly relevant to the underlying action. Those facts demonstrate the probability that Sara Lee's subsidiary, with full knowledge of the patent rights of CTR, decided to proceed to design a product utilizing CTR's concepts. Rather than itself risking an infringement suit in the United States, Sara Lee decided to pass the buck the Dial, reap the rewards of any infringements, and then duck. This Court should not reward such tactics by an international corporation that is fully benefiting from the infringement that its subsidiary—a subsidiary under its control—has caused.

## Conclusion

For all the foregoing reasons, this Court should deny Sara Lee's motion to quash S.C. Johnson's valid subpoena.

Dated this 25 day of August, 2008

HELLER EHRMAN LLP

By          */s/ John S. Skilton*        

John S. Skilton
Michelle M. Umberger
Christopher G. Hanewicz
Lissa R. Koop
Autumn N. Nero
HELLER EHRMAN, LLP
1 East Main Street, Suite 201
Madison, WI  53703
(608) 663-7460
(608) 663-7499 (Fax)

*Attorneys for Plaintiffs* S.C. Johnson & Son, Inc., and
Consultoria Técnica e Representaçöes, LDA

# CERTIFICATE OF SERVICE

I certify that on the 25th day of August, 2008, a copy of the foregoing **S.C. Johnson & Son's Response to Third Party Sara Lee Corporation's Motion to Quash 30(b)(6) Subpoena and Exhibits A-D** were filed with the Court and served on the following counsel of record via e-mail:

Stephen B. Judlowe
sjudlowe@morganlewis.com
Louis J. Virelli, Jr.
lvirelli@morganlewis.com
Philip L. Hirschhorn
phirschhorn@morganlewis.com
Daniel P. Murphy
dmurphy@morganlewis.com
MORGAN, LEWIS & BLOCKIUS, LLP
101 Park Avenue
New York, NY 10178
*Counsel for The Dial Corporation*

Steven R. Trybus                   Michael J. Modl
strybus@jenner.com                 mmodl@axley.com
J. Andrew Hirth                    Steven M. Streck
ahirth@jenner.com                  sstreck@axley.com
JENNER & BLOCK LLP                 AXLEY BRYNELSON LLP
330 N. Wabash Avenue               P.O. Box 1767
Chicago, IL  60611                 Madison, WI  53701
*Counsel for Sara Lee Corporation*  *Counsel for The Dial Corporation*


 /s/ *Eric G. Barber*
Eric G. Barber

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

S.C. JOHNSON & SON, INC. and
CONSULTORIA TÉCNICA E REPRESENTAÇÕES, LDA,

       **Plaintiffs and Counterdefendants,**      **Case No. 3:07-cv-00689-bbc**

**vs.**

THE DIAL CORPORATION,

      **Defendant and Counterclaimant.**

**DECLARATION OF PEDRO QUEIROZ VIEIRA SUBMITTED IN
CONJUNCTION WITH THE EXPERT REPORT OF DR. TIMOTHY A. SHEDD
REGARDING VALIDITY**

      I, Pedro Queiroz Vieira, hereby declare:

1.      I am the sole named inventor on U.S. Patent Number 6,487,367 ("the '367 patent"), which claims an evaporation device for volatile substances.

2.      My company, Consultoria Técnica e Representações, LDA ("CTR") is the sole assignee of the '367 patent. S.C. Johnson & Son, Inc. ("S.C. Johnson") is the sole licensee.

3.      Along with S.C. Johnson, CTR asserts in this suit that The Dial Corporation ("Dial") infringes the '367 patent by selling the TriScents™ line of air freshener products in the United States.

4.      I understand that this declaration will be submitted with the Expert Report of Dr. Timothy A. Shedd Regarding Validity.

I. **History of the development of the device claimed in the '367 patent**

5.        I have been working on designing devices for the delivery of volatile substances since 1991. In that year, I founded CTR. Initially, CTR was a supplier to entities who sold products that dispensed insecticides. We produced dispensers that delivered the insecticide formulations (which are volatiles) by various techniques, using heat applied to a wick or mat in order to increase the rate of evaporation.

6.        While developing dispensers for insecticides, I became familiar with dispensers that delivered fragrance formulations (which are also volatiles) as air fresheners. Initially, I worked with single fragrance dispensers similar to the dispensers that I developed for insecticides.

7.        In approximately mid-2000, I began an attempt to design a device which could deliver, simultaneously or alternately, two or more volatile formulations (insecticides and/or fragrance). This device could be utilized in a variety of applications by the consumer. In order to accommodate consumer preferences, the device should be miniaturized in order to be plugged into an outlet. My overriding goal, therefore, was to develop a multi-purpose device for evaporating two or more volatile substances that could be miniaturized and easily produced at a low cost.

8.        At this time, I was familiar with the phenomenon of "habituation." Habituation occurs when a consumer is no longer able to recognize a particular fragrance because he has been exposed to that fragrance over a period of time. One way to deal with habituation is to alternate delivery of fragrance formulations by the dispensing

2

device. Thus, the device I set out to design should also permit the alternation of fragrance formulations in order to overcome habituation.

9.    My first attempt was to design and develop a device which would utilize a heating block that would include multiple heating elements. I perceived two advantages to such a device. First, such a device could be manufactured and assembled in a cost-effective way because it would be assembled with one component (the heating block with heating elements) rather than several components (the separate heating elements). Second, the fixed placement of the resistors or heating elements in the block would eliminate any tolerance variations and accumulations which would otherwise occur if the heating elements or resistors had to be separately assembled. Any such tolerance variations would have negative consequences for the performance of the product.

10.    The initial design limitation was the overall size of the device. This limitation of size would, in turn, limit the distance available between the heating elements. I first tested two separate heating elements to determine what heat transfer occurred through the air in order to see how one heating element influenced the other heating element. I then needed to determine how a heating block would influence heat transfer between the heating elements. To make this determination, I simulated a heating block containing two heating elements. I also tested different possibilities for the location of the heating elements in the block. As a result of numerous experiments, conducted over a period of several months, I concluded that in order to utilize a heating block, I would have to design it so as to permit sufficient thermal separation between the heating elements so as to minimize heat transfer between the wick openings. As a result

3

of these experiments, I concluded that one way that such thermal separation could be achieved was by reducing the mass of material between the wick openings, thus creating air gaps between the wick holes.

11.    My conception of such a device was captured in a drawing which I sent to my patent attorney Thomas Liebl in late March 2001. Attached hereto as Exhibit A is a true and correct copy of that drawing. To my knowledge and belief, attorney Liebl made application on April 5, 2001 for a European patent and thereafter requested an application for a U.S. patent be filed. The '367 patent issued on Nov. 26, 2002.

12.    Thereafter, I made a prototype of one possible embodiment of the device in order to allow CTR to develop testing data that could be used in discussions with potential customers. Attached hereto as Exhibit B is a picture of the first prototype of my device.

## II.  Attempts to license the patented technology

13.    Thereafter, I began to explore opportunities to commercially exploit the design I had developed and patented. I was contacted by an entity by the name of Carbonate, which had also worked on dual volatile delivery systems, although Carbonate's designs focused on forced air delivery. As a result of discussions with Carbonate, in January 2004, CTR acquired exclusive rights to the Carbonate technology.

14.    Prior to licensing its forced air technology to CTR, Carbonate had been in discussions with several potential customers for its technology. These discussions ultimately resulted in several of these customers contacting CTR.

### A. Dial Corporation

15.       The Dial Corporation had expressed interest to Carbonate concerning the development of a multiple fragrance delivery system.  Carbonate informed Dial that it had licensed its technology to CTR.

16.       I and Carbonate's owner, Paul Pankhurst, had a telephone call on February 18, 2004 with Dial's Debra Park (Director of Technology Acquisitions) and Winston Uchiyama.  Attached hereto as Exhibit C is a true and correct copy of a memorandum I wrote relating to that call.  During this call, Ms. Park expressed interest in obtaining additional information about the different options which I had developed concerning electrical multi-volatile devices.  I was also informed on that call that Dial had been acquired by Henkel KGaA, of Duesseldorf, Germany ("Henkel").

17.       Following this February 18, 2004 call, I sent Ms. Park a copy of a concept presentation which Carbonate and CTR had developed for the purpose of commercializing our devices.  A true and correct copy of the information I sent to Ms. Park is attached hereto as Exhibit D.  Page DC00005234 of Exhibit D is a concept drawing of the heating delivery device which I developed.  This drawing shows a heating block with two openings and thermal separation between the heating elements.

18.       I had a second telephone conversation with Ms. Park on April 8, 2004.  A true and correct copy of my notes relating to that call are attached as Exhibit E.  (I note that the correct date for the call is April 8, 2004, not 2002.)  As the notes show and consistent with what I recall, during this call, Ms. Park requested that I send her

prototypes and cost estimates for several options, two of which were for heated multi-volatile delivery systems.

19.    In follow-up to the April 8, 2004 call, and at the request of Ms. Park, I sent a cost estimate to Dial for different versions of the device and for prototypes. A true copy of the cost estimate and my e-mail to Ms. Park is attached as Exhibit F.

20.    After I sent the cost estimate to Ms. Park, I heard nothing further from Dial.

### B. Henkel

21.    Although I heard nothing back from Dial following my sending of the cost estimates to Ms. Park, I was contacted via e-mail on January 5, 2005 by a consultant whose name was Bernd Komp. Mr. Komp told me that he had been retained by Henkel, which had acquired Dial. Attached hereto as Exhibit G is a true and correct copy of that e-mail. Mr. Komp indicated that Henkel was very interested in evaluating my patented multi-volatile electrical device technology.

22.    To follow up to his initial e-mail, Mr. Komp visited me at my factory in Lisbon on January 13 and 14, 2005. At that meeting, I described to Mr. Komp what I had done to develop the device and gave him a copy of a presentation similar to the one attached above as Exhibit D.

23.    Following Mr. Komp's visit, I had several additional contacts with him, by telephone and by e-mail. However, I later found out that Mr. Komp was relieved of any further responsibilities as a consultant for Henkel and our contacts ceased. I heard nothing thereafter from either Dial or Henkel.

6

### C. Sara Lee

24.      On April 23, 2004, I was contacted by a representative of Sara Lee Household & Body Care International BV of the United Kingdom ("Sara Lee"), Mr. Trevor Withell. Mr. Withell stated to me that he was contacting CTR because of Sara Lee's previous discussions with Carbonate. Mr. Withell and I scheduled a meeting in London between our two companies.

25.      In response to Mr. Withell's contact, I sent him a concept presentation similar to the one attached above as Exhibit D.

26.      Thereafter, on May 13, 2004, I met with Mr. Withell, Jonathan Bull and other Sara Lee employees at Sara Lee's London headquarters. At that meeting, I presented CTR's product concepts, including the multi-volatile device which is the subject of the '367 patent. I am certain that I informed Mr. Withell and the others in attendance that CTR owned patents on this device and others.

27.      At this meeting, the Sara Lee representatives, specifically including Mr. Withell, expressed an interest in pursuing the possibility of Sara Lee working with CTR to develop a multi-volatile device.

28.      Following the London meeting with Sara Lee's representatives, Mr. Withell requested a follow-up meeting at CTR's factory in Lisbon. Attached hereto as Ex. H is a true and correct copy of an email which I received from Mr. Withell making that request.

29.      In fact, Mr. Withell did come to CTR's factory in Lisbon on May 17-18, 2004. He was accompanied by Arjan Muis of Sara Lee's purchasing department. At this meeting, we discussed further steps that would  be required in order to come to an

7

agreement between our companies. Following this meeting, on June 29, 2004, Mr. Muis

sent me a proposed confidentiality and joint development agreement, which was never

signed.

30.        Following the meeting in Lisbon, I was again called by Trevor Withell,

who requested that I suspend any negotiations or discussions with any other potentially-

interested customer and to remove from CTR's website any references to the multi-

volatile electrical device from CTR's website.

31.        On or about June 10, 2004, Maria José Gonzalez of Sara Lee's air freshener

R&D team requested the opportunity to visit me at our factory in Lisbon, along with her

colleague, Paco Guell. To my belief and understanding, Ms. Gonzalez and Mr. Guell

were technical people who were interested in determining how our multi-volatile

products could be constructed and reviewing test results to see how they performed.

32.        On June 17, 2004, Ms. Gonzalez and Mr. Guell visited CTR's factory in

Lisbon. I met with them, along with John Hamer, the person at CTR who was

responsible for testing CTR and Carbonate's devices for the delivery of multiple

volatiles. To my belief and understanding, Mr. Hamer presented to Ms. Gonzalez and

Mr. Guell in our laboratory test results relating to the performance of these devices. In

addition, to my belief and understanding, they were shown the prototypes that had been

used to generate the test results, including prototypes of CTR's patented device and

prototypes of the patented devices developed by Carbonate. To my recollection, Sara

Lee's technical team (Ms. Gonzalez and Mr. Guell) spent approximately four hours in

our factory interviewing John Hamer and others and analyzing testing data. Attached

8

hereto as Exhibit I is a true and correct copy of the notes of that meeting, taken by John

Hamer.  The following statement contained in these notes has significance to the issues

raised in this litigation:

> The overall advantages of alternating fragrances ("Duality" principle)
> possible with either system were discussed:  overcome user fatigue / refresh
> fragrance awareness.  The systems can be programmed to give optimized
> cycles for fragrance / no fragrance.  The alternating fragrances should
> themselves be harmonious and have some common characteristic.

33.     As a result of their trip to Lisbon on June 17, 2004, it is my belief that Ms.

Gonzalez and Mr. Guell were fully informed of the following features of the device

which I invented:  (1) a unified heating block to permit easy and ready assembly of a

miniaturized device and to fix the heating elements within that block for purposes of

assembly; and (2) the concept of thermal separation, the purpose of which was to

minimize the transfer of heat from one heating element or wick hole to the other.  It is

also my belief that the test results that were shown to Ms. Gonzalez and Mr. Guell

confirmed that these features in fact would function as intended.

34.     Following the second meeting in Portugal, on or about July 1, 2004, I had a

phone call with Mr. Withell, who informed me that Sara Lee was in the process of

completing a market study in order to define and consider the most suitable option for the

"duality" concept product.  I informed Mr. Withell that the proposed agreements sent to

me by Mr. Muis would need to be revised to account for CTR's having suspended

discussions with other potential clients, at Mr. Withell's request.  A true and correct copy

of my notes of that phone call are attached as Ex. J.

35.      Following this July 1, 2004 call, I made repeated efforts to determine whether or not Sara Lee intended to proceed further.  Attached hereto as Ex. K are my notes of a conference call with Mr. Withell on September 3, 2004, which summarize what Mr. Withell told me on that date concerning Sara Lee's determination not to go forward with CTR at that time.  Mr. Withell did thank CTR for its "good cooperation and efforts, and informed that CTR is always welcome to present Sara Lee any innovative ideas regarding air care products."  This telephone call ended our efforts to form a business relationship with Sara Lee.

### III.  Licensing to S.C. Johnson of the device claimed in the '367 patent

36.      Conversations concerning licensing CTR's patented technology to S.C. Johnson commenced approximately in June 2004.  These conversations ultimately resulted in a license agreement which exclusively licensed to S.C. Johnson the patent in suit, among others.  This agreement is dated March 28, 2007.

### IV.  Commercial success of Sara Lee's 3volution product in Europe

37.      Approximately March 1, 2006, I was provided with a copy of a commercial brochure describing a new product to be offered by Sara Lee, first in the UK, to be followed by France and then other European countries.  Attached hereto as Exhibit L is a copy of an e-mail that I sent to Jose Porchia, one of the S.C. Johnson representatives that I was working with at that time.

38.      I later obtained a sample of this product, called the Ambi Pur® 3volution™.  When I looked at the component parts of the disassembled Sara Lee

3volution product, I observed a heating block which included three heating elements which were designed to be individually thermally separated.

39.      It is my understanding and belief that Sara Lee has had significant commercial success, that is, significant sales of the 3volution device in Europe from the time of its initial introduction.


I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct, to the best of my knowledge.

Dated this 30th day of July, 2008.

_____
Pedro Queiroz Vieira

# EXHIBIT B

# Sara Lee Corp · 10-K · For 6/30/07 · EX-21

### Filed On 8/29/07 6:53am ET · SEC File 1-03344 · Accession Number 1193125-7-191200

| Find |    in this entire Filing.    Show Docs searched  and every "hit".

Help...    *Wildcards:* ? (any letter), * (many). *Logic:* for Docs: & (and), | (or); for Text: | (anywhere), "(&)" (near).

| As Of | Filer | Filing | As/For/On | Docs:Pgs |
|-------|-------|--------|-----------|----------|
| 8/29/07 | Sara Lee Corp | 10-K | 6/30/07 | 12:370 |

## Annual Report · Form 10-K
## Filing Table of Contents

| Document/Exhibit | Description | Pages | Size |
|------------------|-------------|-------|------|
| 1: 10-K | Annual Report | HTML | 204K |
| 2: EX-3.(B) | Amended Bylaws, Dated June 28, 2007 | HTML | 105K |
| 3: EX-10.15 | Termination Agreement - Adriaan Nuhn | HTML | 96K |
| 4: EX-10.17 | Sara Lee Corp. 1999 Non-Employee Director Stock Plan, As Amended and Restated | HTML | 99K |
| 5: EX-12.1 | Computation of Ratio of Earnings to Fixed Charges | HTML | 19K |
| 6: EX-13 | Portions of Sara Lee's 2007 Annual Report | HTML | 1,698K |
| **7: EX-21** | **List of Subsidiaries** | **HTML** | **78K** |
| 8: EX-23 | Consent of Pricewaterhousecoopers Llp | HTML | 6K |
| 9: EX-31.1 | Ceo Certification | HTML | 12K |
| 10: EX-31.2 | Cfo Certification | HTML | 12K |
| 11: EX-32.1 | Ceo Certification | HTML | 7K |
| 12: EX-32.2 | Cfo Certification | HTML | 7K |

## EX-21 · List of Subsidiaries

*This is an EDGAR HTML document rendered as filed.  [ Alternative Formats ]*

---

## List of Subsidiaries

Exhibit 21

### Sara Lee Corporation

Following is a list of active subsidiaries of the registrant. Subsidiaries that are inactive or exist solely to protect business names but do not conduct business have been omitted. The omitted subsidiaries, considered in the aggregate, do not constitute a significant subsidiary.

### UNITED STATES SUBSIDIARIES

| Name | Jurisdiction of Formation |
| --- | --- |
| EGR CALIFORNIA REGION SUPPORT SERVICES, INC. | California |
| GALLO SALAME, INC. | California |
| BRYAN FOODS, INC. | Delaware |
| CONTINENTAL COFFEE PRODUCTS COMPANY | Delaware |
| COURTAULDS TEXTILES U.S., INC. | Delaware |
| EARTHGRAINS BAKING COMPANIES, INC. | Delaware |
| EARTHGRAINS INTERNATIONAL HOLDINGS, INC. | Delaware |
| EGBERT LLC | Delaware |
| EGR INTERNATIONAL, INC. | Delaware |
| EGR RESOURCES, INC. | Delaware |
| EGR TEXAS GENERAL PARTNER, LLC | Delaware |
| INTERNATIONAL AFFILIATES & INVESTMENT LLC | Delaware |
| SARA LEE – KIWI HOLDINGS, INC. | Delaware |
| SARA LEE BAKERY GROUP, INC. | Delaware |
| SARA LEE C&T HOLDINGS, LLC | Delaware |
| SARA LEE CHAMPION EUROPE, INC. | Delaware |
| SARA LEE COFFEE LLC | Delaware |
| SARA LEE EQUITY II, LLC | Delaware |
| SARA LEE EQUITY, L.L.C. | Delaware |
| SARA LEE FOODS, INC. | Delaware |
| SARA LEE FRANCE, L.L.C. | Delaware |
| SARA LEE FRENCH FUNDING COMPANY L.L.C. | Delaware |
| SARA LEE FRENCH INVESTMENT COMPANY, L.L.C. | Delaware |
| SARA LEE FRESH, INC. | Delaware |
| SARA LEE GLOBAL FINANCE, L.L.C. | Delaware |
| SARA LEE INTERNATIONAL LLC | Delaware |
| SARA LEE INTERNATIONAL FINANCE CORPORATION | Delaware |
| SARA LEE INTERNATIONAL FUNDING COMPANY L.L.C. | Delaware |
| SARA LEE INTERNATIONAL INVESTMENT, L.L.C. | Delaware |
| SARA LEE MEXICANA HOLDINGS INVESTMENT, L.L.C. | Delaware |
| SARA LEE/DE US LLC | Delaware |
| SARAMAR, L.L.C. | Delaware |
| SOUTHERN FAMILY FOODS, L.L.C. | Delaware |
| SPECIALTY BUYING, INC. | Delaware |
| WS REAL ESTATE, LLC | Delaware |
| DJW INCORPORATED | Kentucky |
| METZ BAKING COMPANY, L.L.C. | Iowa |
| BUTTER KRUST BAKING COMPANY, INC. | Pennsylvania |
| EARTHGRAINS REFRIGERATED DOUGH PRODUCTS, L.P. | Texas |

| Name | Jurisdiction of Formation |
|------|---------------------------|

**NON-UNITED STATES SUBSIDIARIES**

| Name | Jurisdiction of Formation |
|------|---------------------------|
| SARA LEE APPAREL (AUSTRALASIA) PTY. LTD. | Australia |
| SARA LEE AUSTRALIA | Australia |
| SARA LEE AUSTRALIA & NZ PTY. LTD. | Australia |
| SARA LEE FOOD & BEVERAGE (AUSTRALIA) PTY. LTD. | Australia |
| SARA LEE FOOD HOLDINGS PTY. LTD. | Australia |
| SARA LEE FOODSERVICE (AUSTRALIA) PTY. LTD. | Australia |
| SARA LEE GROUP (AUSTRALIA) PTY LTD | Australia |
| SARA LEE HOLDINGS (AUSTRALIA) PTY. LTD. | Australia |
| SARA LEE HOUSEHOLD & BODY CARE (AUSTRALIA) PTY LTD. | Australia |
| SL/DE AUSTRALIA PTY LTD | Australia |
| SL/DE HOLDINGS (AUSTRALIA) PTY. LTD. | Australia |
| SANTORA KAFFEE SYSEM GMBH | Austria |
| SARA LEE HOUSEHOLD AND BODY CARE OSTERREICH GMBH | Austria |
| BI BELGIUM B.V.B.A. | Belgium |
| DOUWE EGBERTS COFFEE SYSTEMS N.V. | Belgium |
| INTRADAL PRODUKTIE BELGIUM NV | Belgium |
| JACQMOTTE N.V. | Belgium |
| SARA LEE COFFEE & TEA BELGIUM N.V./S.A. | Belgium |
| SARA LEE FINANCE BELGIUM B.V.B.A. | Belgium |
| SARA LEE HOUSEHOLD AND BODY CARE BELGIUM N.V. | Belgium |
| SARA LEE/DE IMMO N.V. | Belgium |
| ZWARTE KAT B.V.B.A. | Belgium |
| CONOPLEX INSURANCE COMPANY LTD. | Bermuda |
| SARA LEE CAFES DO BRASIL LTDA. | Brazil |
| SARA LEE FOODSERVICE LTD. | Canada |
| TANA CANADA, INC. | Canada |
| FUJIAN SARA LEE CONSUMER PRODUCTS CO. LTD. | China |
| KIWI BRANDS TIANJIN CO. LTD. | China |
| NUTRI-METICS INTERNATIONAL (GUANGZHOU) LTD. | China |
| SARA LEE/DE (CYPRUS) LIMITED | Cyprus |
| SARA LEE/DE INVESTMENTS (CYPRUS) LIMITED | Cyprus |
| BALIRNY DOUWE EGBERTS A.S. | Czech Republic |
| A/S BLUMOLLER | Denmark |
| MERRILD KAFFE A/S | Denmark |
| SARA LEE INTIMATES SCANDINAVIA A/S | Denmark |
| SARA LEE/DE NORDIC FINANCE K/S | Denmark |
| APD CHEMICALS LIMITED | England |
| ARIS ISOTONER UK LIMITED | England |
| ASHE CHEMICAL LIMITED | England |
| COFFEE COMPLETE LIMITED | England |
| COURTAULDS TEXTILES (HOLDINGS) LIMITED | England |
| COURTAULDS TEXTILES LIMITED | England |
| DOUWE EGBERTS COFFEE SYSTEMS LIMITED | England |

2

| Name | Jurisdiction of Formation |
| --- | --- |
| ELBEO LIMITED | England |
| IMPORT FOODS SARA LEE LIMITED | England |
| KIWI (EA) LIMITED | England |
| KIWI CARIBBEAN LIMITED | England |
| KIWI HOLDINGS | England |
| LOVABLE ITALIANA LIMITED | England |
| MASTER MODELS LIMITED | England |
| NEW WAY PACKAGED PRODUCTS LIMITED | England |
| PLAYTEX LIMITED | England |
| SARA LEE (UK INVESTMENTS) LIMITED | England |
| SARA LEE ACQUISITION LIMITED | England |
| SARA LEE BAKERY UK LIMITED | England |
| SARA LEE COFFEE & TEA UK LIMITED | England |
| SARA LEE FINANCE UK | England |
| SARA LEE HOUSEHOLD & BODY CARE UK LIMITED | England |
| SARA LEE HOUSEHOLD UK LIMITED | England |
| SARA LEE INVESTMENTS | England |
| SARA LEE UK HOLDINGS LIMITED | England |
| SARA LEE UK LIMITED | England |
| SARA LEE UK PENSION TRUSTEE LIMITED | England |
| SARA LEE/DE HOLDINGS LIMITED | England |
| TEMANA INTERNATIONAL LIMITED | England |
| YARNALL LIMITED | England |
| ZAMBESI FINANCE | England |
| BI FRANCE SARL | France |
| COURTAULDS TEXTILES HOLDING S.A.S. | France |
| CT DIFFUSION SNC | France |
| DA+ S.A.S. | France |
| DEF FINANCE S.N.C. | France |
| DEF HOLDING S.N.C. | France |
| EURODOUGH, S.A.S. | France |
| EURO-RAULET, S.A.S. | France |
| EUROROL, S.A.S. | France |
| EUROVITA, S.A.S. | France |
| KIWI HOLDINGS S.N.C. | France |
| MAISON DU CAFÉ COFFEE SYSTEMS FRANCE S.N.C. | France |
| SARA LEE COFFEE & TEA FRANCE S.N.C. | France |
| SARA LEE FRANCE FINANCE S.A.S. | France |
| SARA LEE FRANCE S.N.C. | France |
| SARA LEE HOUSEHOLD AND BODY CARE FRANCE S.N.C. | France |
| SARA LEE/DE FRANCE S.A.S. | France |
| ALLSOHL GMBH | Germany |
| BAMA INTERNATIONAL, a branch of Sara Lee Deutschland GmbH | Germany |
| COFFENCO INTERNATIONAL GMBH | Germany |
| DEFACTO DEUTSCHLAND GMBH | Germany |

3

| Name | Jurisdiction of Formation |
| --- | --- |
| FAIRWIND GMBH | Germany |
| ISCAL GMBH | Germany |
| JENSEN & GRAF KAFFEESPEZIALITATEN GMBH | Germany |
| JUSTEPAS GMBH | Germany |
| MELTONIAN GMBH | Germany |
| SARA LEE COFFEE & TEA GERMANY GMBH | Germany |
| SARA LEE DEUTSCHLAND GMBH | Germany |
| SARA LEE FOODS GERMANY GMBH | Germany |
| SARA LEE GERMANY GMBH | Germany |
| SARA LEE HOUSEHOLD & BODY CARE, a branch of Sara Lee Deutschland GmbH | Germany |
| SARA LEE/DE HOLDING GMBH | Germany |
| YOURSTEP GMBH | Germany |
| FORSEL CONSUMER A.E. | Greece |
| SARA LEE COFFEE AND TEA HELLAS S.A. | Greece |
| SARA LEE HELLAS A.E. | Greece |
| SARA LEE HOLDINGS HELLAS E.P.E. | Greece |
| NUTRI-METICS INTERNATIONAL (HONG KONG) LIMITED | Hong Kong |
| SARA LEE HONG KONG LTD. | Hong Kong |
| SARA LEE HUNGARY KAVE ES TEA KERESKEDELMI KFT. | Hungary |
| SARA LEE KAVE ES TEA ELELMIEZER FELDOLGOZO, CSOMAGOLO, KERESKEDELMI RT | Hungary |
| GODREJ SARA LEE LTD. | India |
| SARA LEE HOUSEHOLD AND BODY CARE INDIA PVT. LTD. | India |
| P.T. PREMIER VENTURES INDONESIA | Indonesia |
| P.T. SARA LEE BODY CARE INDONESIA TBK | Indonesia |
| P.T. SARA LEE HOUSEHOLD INDONESIA | Indonesia |
| P.T. SARA LEE INDONESIA | Indonesia |
| P.T. SARA LEE TRADING INDONESIA | Indonesia |
| P.T. SURIA YOZANI INDONESIA | Indonesia |
| LINNYSHAW INSURANCE LIMITED | Isle Of Man |
| EURODOUGH ITALIA SRL | Italy |
| SARA LEE HOUSEHOLD AND BODY CARE ITALY S.P.A. | Italy |
| KIWI CARIBBEAN LTD. | Jamaica |
| SARA LEE HOUSEHOLD AND BODY CARE KENYA LTD. | Kenya |
| SARA LEE BALTIC, S.I.A. | Latvia |
| AGEPAL SARL | Luxembourg |
| SARA LEE COFFEE LUXEMBOURG S.A.R.L. | Luxembourg |
| SARA LEE FINANCE LUXEMBOURG SARL | Luxembourg |
| SARA LEE HOUSEHOLD AND BODY CARE (MALAWI) LTD. | Malawi |
| HOMESAFE PRODUCTS (M) SDN. BHD. | Malaysia |
| KIWI MANUFACTURING SDN. BHD. | Malaysia |
| SARA LEE MALAYSIA SDN. BHD. | Malaysia |
| SARA LEE SOUTH EAST ASIA SDN BHD | Malaysia |
| 2476230 MALTA LIMITED | Malta |

4

| Name | Jurisdiction of Formation |
| --- | --- |
| SARA LEE MAURITIUS HOLDING PTE LTD. | Mauritius |
| CONGELACION Y CONSERVACION DE ALIMENTOS, S. DE R.L. DE C.V. | Mexico |
| DECS GLOBAL NETWORK MEXICANA, S.A. DE C.V. | Mexico |
| DECS INTERNATIONAL MEXICO, S.A. DE C.V. | Mexico |
| MEXICAN TRADERS S.A. DE C.V. | Mexico |
| QUALTIA ALIMENTOS COMERCIAL S. DE R.L. DE C.V. | Mexico |
| QUALTIA ALIMENTOS OPERACIONES, S. DE R.L. DE C.V. | Mexico |
| QUALTIA ALIMENTOS S. DE R.L. DE C.V. | Mexico |
| QUALTIA ALIMENTOS SERVICIOS COMERCIALES S. DE R.L. DE C.V. | Mexico |
| SARA LEE HOUSEHOLD AND BODY CARE DE MEXICO S. DE R.L. DE C.V. | Mexico |
| AVORY SHLAIN COSMETICS (NAMIBIA) PTY. LTD. | Namibia |
| BARO BESTUURSMAATSCHAPPIJ B.V. | Netherlands |
| BEHEERSMAATSCHAPPIJ BEVEM B.V. | Netherlands |
| BETKE HOLLANDSCHE CACAPORDUCTEN EXPORT MAATSCHAPPIJ B.V. | Netherlands |
| BIOTEX BV | Netherlands |
| BUTTRESS B.V. | Netherlands |
| COOPERATIEVE DOUWE EGBERTS FINANCE U.A. | Netherlands |
| COOPERATIEVE SARA LEE HOUSEHOLD AND BODY CARE FINANCE B.V. | Netherlands |
| DECAF B.V. | Netherlands |
| DEFACTO B.V. | Netherlands |
| DEJ INTERNATIONAL RESEARCH COMPANY B.V. | Netherlands |
| DETREX B.V. | Netherlands |
| DETREX NEDERLAND B.V. | Netherlands |
| DOUWE EGBERT KOFFIE & KADO B.V. | Netherlands |
| DOUWE EGBERTS (Y) B.V. | Netherlands |
| DOUWE EGBERTS BELEGGINGSMAATSCHAPPIJ B.V. | Netherlands |
| DOUWE EGBERTS COFFEE SYSTEMS GLOBAL NETWORK B.V. | Netherlands |
| DOUWE EGBERTS COFFEE SYSTEMS INTERNATIONAL B.V. | Netherlands |
| DOUWE EGBERTS COFFEE SYSTEMS NEDERLAND B.V. | Netherlands |
| DOUWE EGBERTS COFFEE TREATMENT & SUPPLY B.V. | Netherlands |
| DOUWE EGBERTS GLOBAL NETWORK B.V. | Netherlands |
| DOUWE EGBERTS NEDERLAND B.V. | Netherlands |
| DOUWE EGBERTS RHO BV | Netherlands |
| DOUWE EGBERTS SIGMA BV | Netherlands |
| DOUWE EGBERTS VAN NELLE PARTICIPATIONS B.V. | Netherlands |
| EARTHGRAINS EUROPEAN HOLDINGS, C.V. | Netherlands |
| EARTHGRAINS EUROPEAN INVESTMENTS, B.V. | Netherlands |
| EURAGRAL B.V. | Netherlands |
| FIHOMIJ B.V. | Netherlands |
| I. TAS EZN B.V. | Netherlands |
| INTEC B.V. | Netherlands |
| KIWI EUROPEAN HOLDINGS B.V. | Netherlands |
| KONINKLIJKE DOUWE EGBERTS B.V. | Netherlands |

5

| Name | Jurisdiction of Formation |
| --- | --- |
| LODA B.V. | Netherlands |
| MARANDER ASSURANTIE COMPAGNIE B.V. | Netherlands |
| MEINDERSMA B.V. | Netherlands |
| NATRENA B.V. | Netherlands |
| SARA LEE B.A. B.V. | Netherlands |
| SARA LEE COFFEE & TEA ASIA B.V. | Netherlands |
| SARA LEE EXPORT B.V. | Netherlands |
| SARA LEE FOODS EUROPE B.V. | Netherlands |
| SARA LEE FOODS PARTICIPATIES B.V. | Netherlands |
| SARA LEE HOUSEHOLD & BODY CARE NEDERLAND B.V. | Netherlands |
| SARA LEE HOUSEHOLD & BODY CARE RESEARCH, a branch of Sara Lee Household & Body Care International B.V. | Netherlands |
| SARA LEE HOUSEHOLD AND BODY CARE INTERNATIONAL B.V. | Netherlands |
| SARA LEE INTERNATIONAL BV | Netherlands |
| SARA LEE INTERNATIONAL HOLDINGS BV | Netherlands |
| SARA LEE INTIMATES NEDERLAND B.V. | Netherlands |
| SARA LEE INVESTMENTS GREECE B.V. | Netherlands |
| SARA LEE/DE FINANCE B.V. | Netherlands |
| SARA LEE/DE INVESTMENTS B.V. | Netherlands |
| SARA LEE/DE N.V. | Netherlands |
| SARAMAR EUROPE B.V. | Netherlands |
| TANA B.V. | Netherlands |
| ZIJLSTRA'S MEUBELFABRIEK B.V. | Netherlands |
| CAITLIN FINANCIAL CORPORATION N.V. | Netherlands Antilles |
| CODEF FINANCIAL SERVICES CV | Netherlands Antilles |
| COFICO N.V. | Netherlands Antilles |
| DEFICO N.V. | Netherlands Antilles |
| SARA LEE/DE ANTILLES N.V. | Netherlands Antilles |
| SARA LEE/DE FINANCE (ANTILLES) N.V. | Netherlands Antilles |
| SARA LEE/DE FINANCE S.E.P. | Netherlands Antilles |
| SARA LEE/DE INVESTMENTS (ANTILLES) NV | Netherlands Antilles |
| SARA LEE/DE TRADING (ANTILLES) N.V. | Netherlands Antilles |
| SARA LEE (NZ) LTD. | New Zealand |
| SARA LEE FOODSERVICE (NZ) LTD. | New Zealand |
| SARA LEE GROUP (N.Z.) LTD. | New Zealand |
| SARA LEE HOLDINGS (NZ) LTD. | New Zealand |
| KIWI (NIGERIA) LIMITED | Nigeria |
| KAFFEHUSET FRIELE A/S | Norway |
| SARA LEE HOUSEHOLD & BODY CARE NORGE AS | Norway |
| SARA LEE CANADA HOLDINGS LIMITED | Nova Scotia |
| PERVEZ INDUSTRIAL CORPORATION PTE. LTD. | Pakistan |
| CAVITE HORIZONS HOLDING, INC. | Philippines |
| METROLAB INDUSTRIES, INC. | Philippines |
| SARA LEE PHILIPPINES INC. | Philippines |
| BAMA POLSKA SP. Z.O.O. | Poland |

6

| Name | Jurisdiction of Formation |
| --- | --- |
| PRZEDIEBIORSTWO PRIMA SA | Poland |
| SARA LEE HOUSEHOLD AND BODY CARE POLAND SP.Z.O.O. | Poland |
| BIMBO-PRODUCTOS ALIMENTARES SOCOEDADE UNIPESSOAL, LIMITADA | Portugal |
| DOUWE EGBERTS PORTUGAL—PRODUTOS ALIMENTARES LDA. | Portugal |
| SARA LEE HOUSEHOLD AND BODY CARE PORTUGAL, PRODUTOS DE CONSUMO LDA | Portugal |
| SARA LEE/DE ESPANA, PORTUGUESE BRANCH | Portugal |
| DOUW EGBERTS RUSSBRANDS Z.A.O. | Russian Federation |
| SARA LEE EXPORT B.V. (REP. OFFICE) | Russian Federation |
| SARA LEE SINGAPORE PTE LTD. | Singapore |
| SARA LEE SLOVAKIA, S.R.O. | Slovak Republic |
| SARA LEE (SOUTH AFRICA) PTY LTD. | South Africa |
| SOUTH AFRICAN GOSSARD (PROPRIETARY) LIMITED | South Africa |
| BIMBO, S.A. | Spain |
| BIMBO-MARTINEZ COMERCIAL, S.L. | Spain |
| CATDES, S.A. | Spain |
| PIMAD, S.A. | Spain |
| SARA LEE BAKERY IBERIA CORPORATIVA, S.L. | Spain |
| SARA LEE BAKERY IBERIAN INVESTMENTS, S.L. | Spain |
| SARA LEE BRANDED APPAREL ESPANA S.L. | Spain |
| SARA LEE CAFES A LA CREMA J. MARCILLA Y CAFES SOLEY, S.L. | Spain |
| SARA LEE FINANCE SPAIN S.L. | Spain |
| SARA LEE HOUSEHOLD AND BODY CARE ESPANA, S.L. | Spain |
| SARA LEE IBERIA, S.L. | Spain |
| SARA LEE SOUTHERN EUROPE, S.L. | Spain |
| GODREJ SARA LEE LANKA PVT. LTD. | Sri Lanka |
| SARA LEE HOUSEHOLD & BODY CARE LANKA PVT. LTD. | Sri Lanka |
| MERRILD COFFEE SYSTEMS SVERIGE AB | Sweden |
| OPUS HEALTH CARE AB | Sweden |
| SARA LEE HOUSEHOLD & BODY CARE SVERIGE AB | Sweden |
| SARA LEE INTIMATES SCANDINAVIA AB | Sweden |
| DECOTRADE AG | Switzerland |
| PRODUCT SUPPLIERS A.G. | Switzerland |
| SARA LEE HOUSEHOLD AND BODY CARE SCHWEIZ AG | Switzerland |
| TELEC A.G. | Switzerland |
| KIWI (THAILAND) LTD | Thailand |
| SARA LEE (THAILAND) LTD. | Thailand |
| SARA LEE COFFEE & TEA (THAILAND) LTD. | Thailand |
| GROMTEX S.A.R.L. | Tunisia |
| KRS S.A.R.L. | Tunisia |
| P.T.X. TUNISIE S.A.R.L. | Tunisia |
| SARA LEE HOUSEHOLD AND BODY CARE (TURKEY), REP. OFFICE | Turkey |
| SARA LEE HOUSEHOLD & BODY CARE UGANDA LTD. | Uganda |
| UNINEX S.A. | Uruguay |

7

Case 1:08-cv-04696    Document 10-3    Filed 08/25/2008    Page 10 of 10

| Name | Jurisdiction of Formation |
| --- | --- |
| SARA LEE RETIREMENT PTY. LTD. | Victoria |
| SARA LEE HOUSEHOLD AND BODY CARE ZAMBIA LTD. | Zambia |
| KIWI BRANDS (PRIVATE) LIMITED | Zimbabwe |
| SARA LEE HOUSEHOLD AND BODY CARE ZIMBABWE PTE LTD. | Zimbabwe |

8

Filing Submission  -  Alternative Formats (Word / Rich Text, HTML, Plain Text, SGML, XML, et al.)

Copyright © 2008 **Fran Finnegan & Company**  All Rights Reserved.
www.secinfo.com - Mon, 25 Aug 2008 19:31:43.2 GMT - Privacy - Help

# EXHIBIT C

*SEC Info*    Home    Search    My Interests    Help    Sign In    *Please Sign In*

# Sara Lee Corp · 8-K · For 8/7/08 · EX-99

### Filed On 8/7/08 7:32am ET · SEC File 1-03344 · Accession Number 1193125-8-169163

Find | in this entire Filing.    Show Docs searched    and every "hit".

Help... | *Wildcards:* ? (any letter), * (many). *Logic:* for Docs: & (and), | (or); for Text: | (anywhere), "(&)" (near).

| As Of | Filer | Filing | As/For/On | Docs:Pgs |
|-------|-------|--------|-----------|----------|
| 8/07/08 | Sara Lee Corp | 8-K{2,9} | 8/07/08 | 2:86 |

## Current Report · Form 8-K
## Filing Table of Contents

| Document/Exhibit | | Description | Pages | Size |
|------------------|--|-------------|-------|------|
| 1: 8-K | Current Report | | HTML | 12K |
| 2: EX-99 | Press Release | | HTML | 544K |

## EX-99 · Press Release

*This is an EDGAR HTML document rendered as filed.  [ Alternative Formats ]*

---

| Press Release |

**Exhibit 99**

Media: Jon Harris, +1.630.598.8661
Analysts: Aaron Hoffman, +1.630.598.8739



### SARA LEE REPORTS SOLID IMPROVEMENT IN UNDERLYING OPERATING RESULTS FOR FOURTH QUARTER AND FISCAL 2008

*Net sales up 12.2% in the fourth quarter and 10.3% for fiscal 2008; adjusted net sales[1] up 5.5% and 4.6%, respectively*

*Net significant items reduced fourth quarter diluted EPS by $1.26 and fiscal 2008 diluted EPS by $1.16, resulting in diluted EPS as reported of $(.98) for the quarter and $(.14) for the year*

*Adjusted EPS from continuing operations[2] were $.83 for fiscal 2008, compared to $.77 in fiscal 2007*

*Operating margin of (15.1)% for the fourth quarter and 1.8% for fiscal 2008; adjusted operating margin of 11.0% for the quarter and 8.1% for the year*

DOWNERS GROVE, Ill. (Aug. 7, 2008) – Sara Lee Corp. (NYSE: SLE) today announced that net sales for fiscal 2008, ending June 28, 2008, were $13.2 billion, an increase of 10.3% compared to $12.0 billion in the prior year. The strong overall net sales growth was driven by favorable foreign currency exchange rates, most notably the euro, price increases to cover higher input costs and an increase in consolidated unit volumes. Net sales grew in all six of the business segments with particularly strong growth in international beverage (+22.9%), international bakery (+16.1%), household and body care (+12.2%) and North American retail bakery (+9.2%) . The corporation's adjusted net sales – which exclude acquisitions/divestitures and present fiscal 2007 net sales at fiscal 2008 foreign currency exchange rates – increased 4.6% in fiscal 2008, primarily driven by strong top-line growth in North American retail bakery (+9.2%) and international beverage (+8.6%) . For the fourth quarter of fiscal 2008, Sara Lee reported net sales of $3.5 billion, up 12.2% over the comparable period last year, while adjusted net sales rose 5.5%.

*"Sara Lee had a very good year. As anticipated, we had a strong fourth quarter, with virtually every business segment delivering improved underlying business results,"* said Brenda C. Barnes, chairman and chief executive officer of Sara Lee Corp. *"I am pleased to report that we met the high-end of our full-year adjusted earnings per share outlook and exceeded our adjusted operating margin guidance. We also are very encouraged that the strength of our brands allowed us to offset the unprecedented levels of commodity and other input costs through pricing and helped deliver market share gains and increased operating margins."*

As announced on July 22, 2008, the corporation incurred non-cash, pre-tax impairment charges of $874 million ($850 million after-tax) in the fourth quarter of fiscal 2008, associated with the goodwill balances at its North American foodservice bakery and Spanish bakery business units and write-downs of certain other assets in North America.

Sara Lee reported operating income of $237 million for fiscal 2008, compared to $562 million for fiscal 2007, a decrease of 57.7% . However, adjusted operating income – which excludes the impact of significant items and acquisitions/divestitures and presents fiscal 2007 results at fiscal 2008 foreign currency exchange rates – increased 13.9% to $1,072 million in fiscal 2008 from $940 million in the prior year.

---

[1]    The term *"adjusted net sales"* and other *"adjusted"* financial measures are explained and reconciled to each item's most comparable U.S. generally accepted accounting principles measure at the end of this release.

[2]    See *"Reconciliation of Diluted EPS from Continuing Operations to Adjusted EPS from Continuing Operations"* on page 12.

Sara Lee Reports Solid Improvement in Underlying Operating Results for Fourth Quarter and Fiscal 2008 – Page 2

For the fourth quarter of fiscal 2008, Sara Lee reported an operating loss of $529 million due to the non-cash impairment charges mentioned on the prior page, compared to income of $151 million for the year-ago period. Adjusted operating income, however, was $386 million in the fourth quarter of fiscal 2008, up 56.4% from $246 million in the prior-year period.

In fiscal 2008, diluted EPS as reported were a loss of $.14 per share versus income of $.68 per share in fiscal 2007. In the fourth quarter of fiscal 2008, diluted EPS as reported were a loss of $.98 per share, compared to income of $.16 per share for the year-ago period.

Adjusted EPS from continuing operations were $.83 per share in fiscal 2008, compared to $.77 in fiscal 2007.

**Other Fiscal 2008 Highlights**

- Net cash from operating activities was approximately $600 million in fiscal 2008, compared to $492 million in fiscal 2007, which included $10 million and $88 million of cash generated by discontinued operations, respectively. This year-over-year increase was primarily driven by an increase in earnings before non-cash impairment charges.

- Media advertising and promotion (MAP) spending for continuing operations increased 4.9% in fiscal 2008, driven by higher MAP spending in international beverage and household and body care.

- Net interest expense was $100 million for fiscal 2008, a decrease of $33 million compared to fiscal 2007, primarily resulting from a lower debt level.

- General corporate expenses were $254 million in fiscal 2008, compared to $352 million in fiscal 2007, a decrease primarily due to lower costs associated with the business transformation and lower pension and other benefit plan costs, as well as non-recurrence of costs related to corporate hedging programs.

- In fiscal 2008, the corporation repurchased 19.7 million shares of its common stock at an average price of $16.02 per share, for a total cost of $315 million. The company did not repurchase any shares of its common stock in the fourth quarter. At the end of fiscal 2008, approximately 25 million shares remained authorized by the board of directors for repurchase.

- The effective tax rate for continuing operations for fiscal 2008 was 146.7%, compared to a tax benefit of (2.6)% in fiscal 2007. These tax rates were impacted by various significant items. For further explanation on the tax rate, see page 14 of this release.

**Business Performance Review**

**North American Retail Meats**

- Net sales increased 6.4% to $643 million in the fourth quarter of fiscal 2008, as an 8.5% increase in retail meat sales was partially offset by a 19.4% decline in non-retail commodity meat sales. The increase in retail meat sales was driven by favorable sales mix, price increases and higher unit volumes. Adjusted net sales also increased 6.4%.

- Net sales for the full year increased 3.0% to $2.4 billion. Adjusted net sales also increased 3.0%.

- Operating segment income was $48 million in the fourth quarter, compared to $27 million in the year-ago period. The increase was primarily the result of price increases, favorable sales mix, lower MAP spending and lower SG&A costs. Fourth quarter operating segment income included charges for impairments, exit activities and transformation costs of $33 million compared to $14 million in the prior-year period. Adjusted operating segment income was $81 million in the fiscal 2008 fourth quarter, compared to $41 million in the prior year's period.

- Operating segment income for the full year was $175 million, compared to $94 million last year. Adjusted operating segment income was $208 million, compared to $206 million in fiscal 2007.

Unit volumes increased 0.4% in the fourth quarter, consisting of an increase of 3.8% for retail meats and significantly lower unit volumes for non-retail commodity meats (see footnote on page 11). During the fourth quarter, each of the major retail meats brands – *Jimmy Dean*, *Hillshire Farm*, *Ball Park* and *Sara Lee* – increased market share according to Information Resources, Inc. (IRI) share data (12 weeks ending June 29, 2008). *Ball Park* hotdogs started the summer grilling season strong with a share increase of 1.2 points versus last year to reach 20.9% according to the IRI data. For the full year, unit volumes for the segment increased 2.1%.

Sara Lee Reports Solid Improvement in Underlying Operating Results for Fourth Quarter and Fiscal 2008 – Page 3

**North American Retail Bakery (includes *Senseo* coffee)**

- Net sales increased 12.7% to $590 million in the fourth quarter of fiscal 2008, primarily driven by higher selling prices to offset increased input costs and by unit volume growth. Adjusted net sales also rose 12.7%.

- Net sales for the full year increased 9.2% to $2.2 billion. Adjusted net sales also rose 9.2%.

- Operating segment income was $26 million in the fourth quarter, compared to $2 million in the year-ago period. The improvement was primarily driven by price increases, lower transformation-related expenses and strong unit volumes. Adjusted operating segment income was $29 million, compared to $26 million in the prior year.

- Operating segment income for the full year was $55 million, compared to a loss of $2 million in fiscal 2007. Adjusted operating segment income was $59 million, compared to $46 million in the prior year.

Unit volumes increased 4.2% in the fourth quarter, driven by volume growth across the fresh bakery and branded frozen bakery businesses. The *Sara Lee* brand maintained its position as the No. 1 fresh bread brand in America with a 7.7% share according to IRI data (12 weeks ending June 29, 2008). Unit volumes for the segment were up 1.3% for the full year.

**Foodservice**

- Net sales of $545 million were up 5.7% in the fourth quarter of fiscal 2008, primarily driven by higher prices and higher unit volumes, which were partially offset by an unfavorable sales mix. Adjusted net sales were up 5.5%.

- Net sales for the full year were $2.2 billion, up 1.1%. Adjusted net sales increased 0.9%.

- The segment reported an operating segment loss of $430 million in the fourth quarter, primarily due to $454 million in impairment charges in the foodservice bakery business, compared to operating segment income of $22 million in the prior year's fourth quarter. Adjusted operating segment income in the fourth quarter increased 15.0% to $30 million.

- The segment reported an operating segment loss for the full year of $318 million due to the impairment charges in the fourth quarter. Adjusted operating segment income declined 7.5% for the year.

Unit volumes increased 2.0% in the fourth quarter, as growth in private label bakery products was partially offset by volume softness in foodservice meats and beverage, the latter primarily for traditional roast and ground coffee as a result of competitive and economic pressures. Unit volumes were down 3.1% for the full year.

**International Beverage**

- Net sales increased 22.2% to $881 million in the fourth quarter of fiscal 2008, primarily driven by favorable foreign currency exchange rates, higher prices and favorable sales mix into higher margin single-serve and instant coffees at retail and into *Cafitesse* liquid coffee concentrate at foodservice. Adjusted net sales rose 5.9%.

- Net sales for the full year increased 22.9% to $3.2 billion. Adjusted net sales rose 8.6%.

- Operating segment income was $172 million, up 52.1% from $114 million in the fourth quarter of fiscal 2007, primarily driven by favorable foreign currency exchange rates, positive sales mix and lower SG&A costs. Adjusted operating segment income increased 29.8% to $179 million.

- Operating segment income for the full year increased to $547 million from $317 million. Adjusted operating segment income rose 9.2% to $562 million.

Unit volumes, excluding acquisitions/divestitures, decreased 1.3% in the fourth quarter, as volume increases for *Senseo* single-serve coffee, instant coffees and *Cafitesse* liquid coffee concentrate could not fully offset lower unit volumes from multi-serve roast and ground coffee and hot tea. International beverage unit volumes were up 1.5% for the full year.

Sara Lee Reports Solid Improvement in Underlying Operating Results for Fourth Quarter and Fiscal 2008 – Page 4

**International Bakery**

- Net sales increased 17.8% to $243 million in the fourth quarter of fiscal 2008, primarily driven by favorable foreign currency exchange rates and price increases to cover higher input costs. This was partially offset by lower unit volumes and an unfavorable sales mix shift into private label bread in Spain. Adjusted net sales rose 1.9%.

- Net sales for the full year increased 16.1% to $929 million. Adjusted net sales increased 3.0%.

- The segment reported an operating segment loss of $385 million in the fourth quarter, compared to income of $6 million in the year-ago period with the decrease due to $400 million in impairment charges in the Spanish bakery business. Adjusted operating segment income was $16 million, flat compared to the prior-year period.

- The segment reported an operating segment loss of $346 million for the full year, compared to income of $38 million for fiscal 2007. Adjusted operating segment income for the full year was $63 million, basically flat compared to fiscal 2007.

Unit volumes decreased 2.7% in the fourth quarter, resulting from weak unit volumes in Spain, in part due to a national transportation strike, and lower unit volumes in Australia, partially due to the planned exit of certain product lines. Unit volumes for the year were basically flat.

**Household and Body Care**

- Net sales increased 9.9% to $617 million in the fourth quarter of fiscal 2008, due to favorable foreign currency exchange rates. The effect of higher unit volumes and favorable sales mix were offset by increased trade promotional activity. Adjusted net sales were basically flat.

- Net sales for the full year increased 12.2% to $2.3 billion. Adjusted net sales rose 2.2%.

- Operating segment income increased 47.4% to $117 million in the fourth quarter, primarily driven by favorable foreign currency exchange rates, higher unit volumes, lower MAP spending and continuous improvement savings. These factors were partially offset by the effect of price promotions and an increase in labor costs. Adjusted operating segment income increased 32.5% in the fourth quarter to $118 million.

- Operating segment income for the full year increased 15.7% to $315 million. Adjusted operating segment income increased 3.3% to $323 million in that period.

Unit volumes increased 1.1% in the fourth quarter, primarily driven by strong unit volumes in air care, body care and shoe care. In the fourth quarter, Sara Lee successfully launched the innovative *Ambi Pur* Renov'Air air freshener in Spain and the *Sanex* NaturProtect deodorant line in Belgium, Greece, Denmark, Spain, France and the United Kingdom. Unit volumes for insecticides were soft due to unseasonably cool weather in Southern Europe. In fiscal 2008, unit volumes for the segment, excluding acquisitions/divestitures, rose 4.6%.

**Guidance**

Sara Lee currently expects full-year fiscal 2009 diluted EPS from continuing operations to be in the range of $1.12 to $1.20 per share, which includes $.22 per share of tobacco sales proceeds received in the first quarter of fiscal 2009 from the sale of its tobacco business in fiscal 1999. Actual results may differ from this guidance due to future significant events that may occur, the nature, timing and financial impact of which are not yet known.

Sara Lee Reports Solid Improvement in Underlying Operating Results for Fourth Quarter and Fiscal 2008 – Page 5

| | Fiscal 2009 Guidance | Fiscal 2008 Preliminary | | Change |
|---|---|---|---|---|
| Diluted EPS from cont. ops. as reported | $  1.12 – $1.20/share | $  (.09)/share | +$ | 1.21 – $1.29/share |
| Tobacco sale proceeds | $  .22/share | $  .18/share | +$ | .04/share |
| Significant items, net | — | $  (1.10)/share | +$ | 1.10/share |
| **Adjusted EPS** | $  .90 – $.98/share | $  .83/share | +$ | .07 – $.15/share |
| **Net sales** | $  13.7 – $14.0 billion | $  13.2 billion | | +4% – 6% |
| Operating income from cont. ops. as reported | $1,250 – $1,290 million | $  237 million | | NM |
| Tobacco sale proceeds | $  150 million | $  130 million | +$ | 20 million |
| Significant items, net | — | $ (964) million | +$ | 964 million |
| **Adjusted operating income** | $1,100 – $1,140 million | $ 1,072 million | | +3% – 6% |
| Interest expense, net | $  120 million | $  100 million | +$ | 20 million |
| Reported tax rate | 29.5% – 31.5% | 146.7% | | NM |
| Tobacco sale proceeds | (4.5) pts. | (4.6) pts. | | +0.1 pts. |
| Significant items, net | — | 112.5% pts. | | (112.5) pts. |
| **Adjusted tax rate** | 34% – 36% | 38.8% | | (4.8) – (2.8) pts. |
| Dollar/euro exchange rate | $  1.50 | $  1.47 | +$ | .03 |
| Capital expenditures | $  500 million | $  515 million | $ | (15) million |
| Cash flow from operations | $  750 – $850 million | $  600 million | + | $150 – $250 million |
| Share repurchase | $  500 million | $  315 million | + $ | 185 million |

## Form 10-K and Webcast

The company expects to file its Form 10-K for fiscal 2008 with the Securities and Exchange Commission on Wednesday, Aug. 27, 2008. Please note that the company's financial information is preliminary and subject to change pending the company's filing of its Form 10-K. Sara Lee Corporation's review of its results for fiscal 2008 will be broadcast live via the Internet today at 9 a.m. CDT. During the webcast, the company will discuss fiscal 2008 results and provide an outlook for fiscal 2009. The live webcast can be accessed in the Investor Relations section on www.saralee.com and is anticipated to conclude by 10 a.m. CDT. For people who are unable to listen to the webcast live, a recording will be available on the website two hours following the completion of the webcast until Friday, Feb. 6, 2009.

## Forward-Looking Statements

This release contains forward-looking statements regarding Sara Lee's business prospects, costs and operating results, including statements contained under the heading *"Guidance."* In addition, from time to time, in oral statements and written reports, the corporation discusses its expectations regarding the corporation's future performance by making forward-looking statements preceded by terms such as *"expects," "likely"* or *"believes."* These forward-looking statements are based on currently available competitive, financial and economic data and management's views and assumptions regarding future events. Forward-looking statements are inherently uncertain, and investors must recognize that actual results may differ from those expressed or implied in the forward-looking statements. Consequently, the corporation wishes to caution readers not to place undue reliance on any forward-looking statements. Among the factors that could cause Sara Lee's actual results to differ from such forward-looking statements are factors relating to:

- Sara Lee's relationship with its customers, such as (i) a significant change in Sara Lee's business with any of its major customers, such as Wal-Mart, its largest customer, including changes in the level of inventory these customers maintain; and (ii) credit and other business risks associated with customers operating in a highly competitive retail environment;

- The consumer marketplace, such as (iii) significant competition, including advertising, promotional and price competition, and changes in consumer demand for Sara Lee's products; (iv) fluctuations in the availability and cost of raw materials, Sara Lee's ability to increase product prices in response and the impact on Sara Lee's profitability; (v) the impact of various food safety issues and regulations on sales and profitability of Sara Lee products; and (vi) inherent risks in the marketplace associated with new product introductions, including uncertainties about trade and consumer acceptance;

Sara Lee Reports Solid Improvement in Underlying Operating Results for Fourth Quarter and Fiscal 2008 – Page 6

- Sara Lee's international operations, such as (vii) impacts on reported earnings from fluctuations in foreign currency exchange rates, particularly the European euro, given Sara Lee's significant concentration of business in Western Europe; (viii) Sara Lee's generation of a high percentage of its revenues from businesses outside the U.S. and costs to remit these foreign earnings into the U.S. to fund Sara Lee's domestic operations; and (ix) Sara Lee's ability to continue to source production and conduct manufacturing and selling operations in various countries due to changing business conditions, political environments, import quotas and the financial condition of suppliers;

- Previous business decisions, such as (x) Sara Lee's ability to generate margin improvement through continuous improvement initiatives and transitioning the entire organization to a common information technology system and the risk that the transition to a common information technology system will be disruptive to the business; (xi) Sara Lee's ability to achieve planned cash flows from capital expenditures and acquisitions, particularly its worldwide bakery business, and the impact of changing interest rates and the cost of capital on the discounted value of those planned cash flows, which could impact future impairment analyses; (xii) credit ratings issued by the three major credit rating agencies and the impact these ratings have on Sara Lee's cost to borrow funds and access to capital/debt markets; (xiii) the settlement of a number of ongoing reviews of Sara Lee's income tax filing positions in various jurisdictions and inherent uncertainties related to the interpretation of tax regulations in the jurisdictions in which Sara Lee transacts business; and (xiv) changes in the expense for multi-employer pension plans that Sara Lee participates in.

In addition, the corporation's results may also be affected by general factors, such as economic conditions, political developments, interest and inflation rates, accounting standards, taxes and laws and regulations in markets where the corporation competes. Sara Lee undertakes no obligation to publicly update any forward-looking statements, whether as a result of new information, future events or otherwise.

### About Sara Lee Corporation

Each and every day, Sara Lee (NYSE: SLE) delights millions of consumers and customers around the world. The company has one of the world's best-loved and leading portfolios with its innovative and trusted food, beverage, household and body care brands, including *Ambi Pur, Ball Park, Douwe Egberts, Hillshire Farm, Jimmy Dean, Kiwi, Sanex, Sara Lee* and *Senseo*. Collectively, these brands generate more than $13 billion in annual net sales covering approximately 200 countries. The Sara Lee community consists of 44,000 employees worldwide. Please visit www.saralee.com for the latest news and in-depth information about Sara Lee and its brands.

#         #         #

Sara Lee Reports Solid Improvement in Underlying Operating Results for Fourth Quarter and Fiscal 2008 – Page 7

SARA LEE CORPORATION AND SUBSIDIARIES
Consolidated Statements of Income
For the Quarter and Year Ended June 28, 2008 and June 30, 2007
(in millions, except per share data)
Unaudited

|  | Quarter ended | | Fiscal Year ended | |
|---|---|---|---|---|
|  | June 28, 2008 | June 30, 2007 | June 28, 2008 | June 30, 2007 |
| **Continuing operations** |  |  |  |  |
| Net sales | $3,507 | $3,126 | $13,212 | $11,983 |
| Cost of sales | 2,157 | 1,922 | 8,154 | 7,370 |
| Selling, general and administrative expenses | 975 | 1,012 | 4,039 | 3,905 |
| Charges for (income from) exit activities, assets and business dispositions | 30 | 25 | 38 | 94 |
| Impairment charges | 874 | 16 | 874 | 172 |
| Contingent sale proceeds | — | — | (130) | (120) |
| Interest expense | 44 | 61 | 187 | 261 |
| Interest income | (21) | (32) | (87) | (128) |
|  | 4,059 | 3,004 | 13,075 | 11,554 |
| Income (loss) from continuing operations before income taxes | (552) | 122 | 137 | 429 |
| Income tax expense (benefit) | 128 | 4 | 201 | (11) |
| **Income (loss) from continuing operations** | (680) | 118 | (64) | 440 |
| Income (loss) from discontinued operations, net of tax | (15) | (3) | (14) | 48 |
| Gain (loss) on disposition of discontinued operations, net of tax | — | 2 | (24) | 16 |
| **Net income (loss)** | $ (695) | $ 117 | $ (102) | $ 504 |
| Income (loss) from continuing operations per common share |  |  |  |  |
| Basic | $(0.96) | $ 0.16 | $ (0.09) | $ 0.59 |
| Diluted | $(0.96) | $ 0.16 | $ (0.09) | $ 0.59 |
| Net income (loss) per common share |  |  |  |  |
| Basic | $(0.98) | $ 0.16 | $ (0.14) | $ 0.68 |
| Diluted | $(0.98) | $ 0.16 | $ (0.14) | $ 0.68 |
| Average shares outstanding |  |  |  |  |
| Basic | 707 | 731 | 715 | 741 |
| Diluted | 707 | 734 | 715 | 743 |

Sara Lee Reports Solid Improvement in Underlying Operating Results for Fourth Quarter and Fiscal 2008 – Page 8

**Sara Lee Corporation**
**Operating Results by Business Segment***
(In millions)

| | Fourth Quarter | | | | Fiscal Year | | | |
|---|---|---|---|---|---|---|---|---|
| | 2008 | 2007 | Dollar Change | Percent Change | 2008 | 2007 | Dollar Change | Percent Change |
| *North American Retail Meats* | | | | | | | | |
| Net sales | $ 643 | $605 | $ 38 | 6.4% | $2,424 | $2,355 | $ 69 | 3.0% |
| Adjusted net sales* | $ 643 | $605 | $ 38 | 6.4% | $2,424 | $2,355 | $ 69 | 3.0% |
| Operating segment income | $ 48 | $ 27 | $ 21 | 82.0% | $ 175 | $ 94 | $ 81 | 87.2% |
| Operating margin % | 7.5% | 4.4% | | 3.1% | 7.2% | 4.0% | | 3.2% |
| Increase/(decrease) in operating segment income from: | | | | | | | | |
| Exit activities, asset and business dispositions | $ (14) | $ (9) | $ (5) | | $ (13) | $ (34) | $ 21 | |
| Transformation charges | 1 | (5) | 6 | | — | (17) | 17 | |
| Impairment charge | (20) | — | (20) | | (20) | (34) | 14 | |
| Accelerated depreciation | — | — | — | | — | (27) | 27 | |
| Adjusted operating segment income* | $ 81 | $ 41 | $ 40 | 99.9% | $ 208 | $ 206 | $ 2 | 0.8% |
| Adjusted operating margin %* | 12.6% | 6.7% | | 5.9% | 8.6% | 8.8% | | (0.2)% |
| *North American Retail Bakery* | | | | | | | | |
| Net sales | $ 590 | $524 | $ 66 | 12.7% | $2,183 | $1,998 | $ 185 | 9.2% |
| Adjusted net sales* | $ 590 | $524 | $ 66 | 12.7% | $2,183 | $1,998 | $ 185 | 9.2% |
| Operating segment income (loss) | $ 26 | $ 2 | $ 24 | NM | $ 55 | $ (2) | $ 57 | NM |
| Operating margin % | 4.5% | 0.5% | | 4.0% | 2.5% | (0.1)% | | 2.6% |
| Increase/(decrease) in operating segment income (loss) from: | | | | | | | | |
| Exit activities, asset and business dispositions | $ (3) | $ (3) | $ — | | $ (3) | $ (8) | $ 5 | |
| Transformation charges | — | (4) | 4 | | (1) | (21) | 20 | |
| Impairment charge | — | (16) | 16 | | — | (16) | 16 | |
| Accelerated depreciation | — | (1) | 1 | | — | (3) | 3 | |
| Adjusted operating segment income* | $ 29 | $ 26 | $ 3 | 10.3% | $ 59 | $ 46 | $ 13 | 29.7% |
| Adjusted operating margin %* | 4.9% | 5.0% | | (0.1)% | 2.7% | 2.3% | | 0.4% |
| *Foodservice* | | | | | | | | |
| Net sales | $ 545 | $516 | $ 29 | 5.7% | $2,221 | $2,197 | $ 24 | 1.1% |
| Increase/(decrease) in net sales from: | | | | | | | | |
| Changes in foreign currency exchange rates | $ — | $ (1) | $ 1 | | $ — | $ (4) | $ 4 | |
| Adjusted net sales* | $ 545 | $517 | $ 28 | 5.5% | $2,221 | $2,201 | $ 20 | 0.9% |
| Operating segment income (loss) | $ (430) | $ 22 | $(452) | NM | $ (318) | $ 139 | $(457) | NM |
| Operating margin % | (78.9)% | 4.4% | | (83.3)% | (14.3)% | 6.4% | | (20.7)% |
| Increase/(decrease) in operating segment income (loss) from: | | | | | | | | |
| Exit activities, asset and business dispositions | $ (6) | $ (1) | $ (5) | | $ (5) | $ (7) | $ 2 | |
| Transformation charges | — | (1) | 1 | | — | (3) | 3 | |
| Impairment charge | (454) | — | (454) | | (454) | — | (454) | |
| Accelerated depreciation | — | — | — | | — | (1) | 1 | |
| Adjusted operating segment income* | $ 30 | $ 24 | $ 6 | 15.0% | $ 141 | $ 150 | $ (9) | (7.5)% |
| Adjusted operating margin %* | 5.6% | 5.1% | | 0.5% | 6.3% | 6.9% | | (0.6)% |

Case 1:08-cv-04696    Document 10-4    Filed 08/25/2008    Page 11 of 22

\* Adjusted net sales, adjusted operating segment income and adjusted operating margin % are non-GAAP measures.

See pages 15 and 16 for a detailed explanation of these and other non-GAAP measures used in this release.

Sara Lee Reports Solid Improvement in Underlying Operating Results for Fourth Quarter and Fiscal 2008 – Page 9

**Sara Lee Corporation**
**Operating Results by Business Segment***
(In millions)

| | Fourth Quarter | | | | Fiscal Year | | | |
|---|---|---|---|---|---|---|---|---|
| | 2008 | 2007 | Dollar Change | Percent Change | 2008 | 2007 | Dollar Change | Percent Change |
| *International Beverage* | | | | | | | | |
| Net sales | $ 881 | $ 721 | $ 160 | 22.2% | $3,215 | $2,617 | $ 598 | 22.9% |
| Increase/(decrease) in net sales from: | | | | | | | | |
| Changes in foreign currency exchange rates | $ — | $(113) | $ 113 | | $ — | $ (347) | $ 347 | |
| Disposition | — | 2 | (2) | | — | 2 | (2) | |
| Adjusted net sales* | $ 881 | $ 832 | $ 49 | 5.9% | $3,215 | $2,962 | $ 253 | 8.6% |
| Operating segment income | $ 172 | $ 114 | $ 58 | 52.1% | $ 547 | $ 317 | $ 230 | 72.8% |
| Operating margin % | 19.5% | 15.7% | | 3.8% | 17.0% | 12.1% | | 4.9% |
| Increase/(decrease) in operating segment income from: | | | | | | | | |
| Changes in foreign currency exchange rates | $ — | $ (19) | $ 19 | | $ — | $ (59) | $ 59 | |
| Exit activities, asset and business dispositions | (3) | (2) | (1) | | (4) | (12) | 8 | |
| Transformation charges | (4) | (2) | (2) | | (10) | (8) | (2) | |
| Impairment charge | — | — | — | | — | (118) | 118 | |
| Accelerated depreciation | — | (1) | 1 | | (1) | (1) | — | |
| Adjusted operating segment income* | $ 179 | $ 138 | $ 41 | 29.8% | $ 562 | $ 515 | $ 47 | 9.2% |
| Adjusted operating margin %* | 20.3% | 16.6% | | 3.7% | 17.5% | 17.4% | | 0.1% |
| *International Bakery* | | | | | | | | |
| Net sales | $ 243 | $ 205 | $ 38 | 17.8% | $ 929 | $ 799 | $ 130 | 16.1% |
| Increase/(decrease) in net sales from: | | | | | | | | |
| Changes in foreign currency exchange rates | $ — | $ (32) | $ 32 | | $ — | $ (102) | $ 102 | |
| Adjusted net sales* | $ 243 | $ 237 | $ 6 | 1.9% | $ 929 | $ 901 | $ 28 | 3.0% |
| Operating segment income (loss) | $(385) | $ 6 | $(391) | NM | $ (346) | $ 38 | $(384) | NM |
| Operating margin % | NM | 2.9% | | NM | (37.3)% | 4.7% | | (42.0)% |
| Increase/(decrease) in operating segment income (loss) from: | | | | | | | | |
| Changes in foreign currency exchange rates | $ — | $ (2) | $ 2 | | $ — | $ (7) | $ 7 | |
| Exit activities, asset and business dispositions | — | (6) | 6 | | (7) | (14) | 7 | |
| Transformation charges | (1) | (2) | 1 | | (2) | (4) | 2 | |
| Impairment charge | (400) | — | (400) | | (400) | — | (400) | |
| Adjusted operating segment income* | $ 16 | $ 16 | $ — | (0.7)% | $ 63 | $ 63 | $ — | 0.2% |
| Adjusted operating margin %* | 6.5% | 6.7% | | (0.2)% | 6.7% | 6.9% | | (0.2)% |
| *Household and Body Care* | | | | | | | | |
| Net sales | $ 617 | $ 561 | $ 56 | 9.9% | $2,291 | $2,042 | $ 249 | 12.2% |
| Increase/(decrease) in net sales from: | | | | | | | | |
| Changes in foreign currency exchange rates | $ — | $ (56) | $ 56 | | $ — | $ (197) | $ 197 | |
| Acquisition | — | — | — | | 2 | — | 2 | |
| Adjusted net sales* | $ 617 | $ 617 | $ — | (0.1)% | $2,289 | $2,239 | $ 50 | 2.2% |
| Operating segment income | $ 117 | $ 79 | $ 38 | 47.4% | $ 315 | $ 272 | $ 43 | 15.7% |
| Operating margin % | 18.9% | 14.1% | | 4.8% | 13.7% | 13.3% | | 0.4% |
| Increase/(decrease) in operating segment income from: | | | | | | | | |
| Changes in foreign currency exchange rates | $ — | $ (7) | $ 7 | | $ — | $ (24) | $ 24 | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Exit activities, asset and business dispositions | 1 | (1) | 2 | | 1 | — | 1 | |
| Transformation charges | (2) | (2) | — | | (8) | (13) | 5 | |
| Impairment charge | — | — | — | | — | (4) | 4 | |
| Acquisition | — | — | — | | (1) | — | (1) | |
| **Adjusted operating segment income\*** | $ 118 | $ 89 | $ 29 | 32.5% | $ 323 | $ 313 | $ 10 | 3.3% |
| **Adjusted operating margin %\*** | 19.1% | 14.4% | | 4.7% | 14.1% | 14.0% | | 0.1% |

\* Adjusted net sales, adjusted operating segment income and adjusted operating margin % are non-GAAP measures.

See pages 15 and 16 for a detailed explanation of these and other non-GAAP measures used in this release.

Sara Lee Reports Solid Improvement in Underlying Operating Results for Fourth Quarter and Fiscal 2008 – Page 10

**Sara Lee Corporation**
**Operating Results by Business Segment***
(In millions)

| | Fourth Quarter | | | | Fiscal Year | | | |
|---|---|---|---|---|---|---|---|---|
| | 2008 | 2007 | Dollar Change | Percent Change | 2008 | 2007 | Dollar Change | Percent Change |
| *Total Sara Lee* | | | | | | | | |
| Net sales—total business segments | $3,519 | $3,132 | $ 387 | | $13,263 | $12,008 | $1,255 | |
| Intersegment | (12) | (6) | (6) | | (51) | (25) | (26) | |
| Net sales | 3,507 | 3,126 | 381 | 12.2% | 13,212 | 11,983 | 1,229 | 10.3% |
| Increase/(decrease) in net sales from: | | | | | | | | |
| Changes in foreign currency exchange rates | — | (202) | 202 | | — | (650) | 650 | |
| Acquisition/disposition | — | 2 | (2) | | 2 | 2 | — | |
| Adjusted net sales* | $3,507 | $3,326 | $ 181 | 5.5% | $13,210 | $12,631 | $ 579 | 4.6% |
| Total operating segment income (loss) | $ (452) | $ 250 | $(702) | NM | $ 428 | $ 858 | $ (430) | (50.1)% |
| Amortization of trademarks and other intangibles | (18) | (18) | — | | (67) | (64) | (3) | |
| General corporate expenses | (59) | (81) | 22 | | (254) | (352) | 98 | |
| Contingent sales proceeds | — | — | — | | 130 | 120 | 10 | |
| Operating income (loss) | $ (529) | $ 151 | $(680) | NM | $ 237 | $ 562 | $ (325) | (57.7)% |
| Operating margin % | (15.1)% | 4.8% | | (19.9)% | 1.8% | 4.7% | | (2.9)% |
| Increase/(decrease) in operating income (loss) from: | | | | | | | | |
| Contingent sale proceeds | $ — | $ — | $ — | | $ 130 | $ 120 | $ 10 | |
| Changes in foreign currency exchange rates | — | (26) | 26 | | — | (81) | 81 | |
| Exit activities, asset and business dispositions | (30) | (25) | (5) | | (38) | (94) | 56 | |
| Transformation charges | (11) | (26) | 15 | | (51) | (119) | 68 | |
| Accelerated depreciation | — | (2) | 2 | | (1) | (32) | 31 | |
| Impairment charges | (874) | (16) | (858) | | (874) | (172) | (702) | |
| Acquisition | — | — | — | | (1) | — | (1) | |
| Adjusted operating income* | $ 386 | $ 246 | $ 140 | 56.4% | $ 1,072 | $ 940 | $ 132 | 13.9% |
| Adjusted operating margin %* | 11.0% | 7.4% | | 3.6% | 8.1% | 7.4% | | 0.7% |

\* Adjusted net sales, adjusted operating income and adjusted operating margin % are non-GAAP measures.

See pages 15 and 16 for a detailed explanation of these and other non-GAAP measures used in this release.

Sara Lee Reports Solid Improvement in Underlying Operating Results for Fourth Quarter and Fiscal 2008 – Page 11

**Net Sales Bridge**
**Fiscal Year 2008**

The following table illustrates the components of the change in net sales versus the prior year for each of the six reported business segments.

| Fourth Quarter end June 28, 2008 | Unit Volume | + | Price/ Mix/Other | = | Adjusted** Net Sales Change | + | Acquisitions/ Divestitures | + | Foreign Exchange | = | Total Net Sales Change |
|---|---|---|---|---|---|---|---|---|---|---|---|
| North American Retail |  |  |  |  |  |  |  |  |  |  |  |
| Meats* | 0.4% |  | 6.0% |  | **6.4%** |  | 0.0% |  | 0.0% |  | **6.4%** |
| Retail meats | 3.8% |  | 4.7% |  | 8.5% |  | 0.0% |  | 0.0% |  | 8.5% |
| Commodity meats | (12.8)% |  | (6.6)% |  | (19.4)% |  | 0.0% |  | 0.0% |  | (19.4)% |
| North American Retail |  |  |  |  |  |  |  |  |  |  |  |
| Bakery | 4.2% |  | 8.5% |  | **12.7%** |  | 0.0% |  | 0.0% |  | **12.7%** |
| Foodservice | 2.0% |  | 3.5% |  | **5.5%** |  | 0.0% |  | 0.2% |  | **5.7%** |
| International Beverage | (1.3)% |  | 7.2% |  | **5.9%** |  | (0.3)% |  | 16.6% |  | **22.2%** |
| International Bakery | (2.7)% |  | 4.6% |  | **1.9%** |  | 0.0% |  | 15.9% |  | **17.8%** |
| Household and Body Care | 1.1% |  | (1.2)% |  | **(0.1)%** |  | 0.0% |  | 10.0% |  | **9.9%** |
| **Total Continuing Business** | **0.9%** |  | **4.6%** |  | **5.5%** |  | **(0.1)%** |  | **6.8%** |  | **12.2%** |

| Fiscal Year end June 28, 2008 | Unit Volume | + | Price/ Mix/Other | = | Adjusted** Net Sales Change | + | Acquisitions/ Divestitures | + | Foreign Exchange | = | Total Net Sales Change |
|---|---|---|---|---|---|---|---|---|---|---|---|
| North American Retail |  |  |  |  |  |  |  |  |  |  |  |
| Meats* | 2.1% |  | 0.9% |  | **3.0%** |  | 0.0% |  | 0.0% |  | **3.0%** |
| Retail meats | 0.6% |  | 5.9% |  | 6.5% |  | 0.0% |  | 0.0% |  | 6.5% |
| Commodity meats | 8.7% |  | (41.3)% |  | **(32.6)%** |  | 0.0% |  | 0.0% |  | (32.6)% |
| North American Retail |  |  |  |  |  |  |  |  |  |  |  |
| Bakery | 1.3% |  | 7.9% |  | **9.2%** |  | 0.0% |  | 0.0% |  | **9.2%** |
| Foodservice | (3.1)% |  | 4.0% |  | **0.9%** |  | 0.0% |  | 0.2% |  | **1.1%** |
| International Beverage | 1.5% |  | 7.1% |  | **8.6%** |  | 0.0% |  | 14.3% |  | **22.9%** |
| International Bakery | 0.3% |  | 2.7% |  | **3.0%** |  | 0.0% |  | 13.1% |  | **16.1%** |
| Household and Body Care | 4.6% |  | (2.4)% |  | **2.2%** |  | 0.1% |  | 9.9% |  | **12.2%** |
| **Total Continuing Business** | **1.2%** |  | **3.4%** |  | **4.6%** |  | **0.0%** |  | **5.7%** |  | **10.3%** |

**Notes:**

\*    The unit volume change in the North American retail meats business segment includes unit volumes for both the retail meats business and the non-retail commodity meats business.

Unit volumes in retail meats increased 3.8% for the quarter and 0.6% for the year-to-date period. The retail unit volumes were negatively impacted by the exit of a pork slaughtering and meat production facility, noted below, and the associated product categories produced at this facility, a portion of which were sold at retail. Excluding the impact of the exit of those product categories, retail volumes increased 5.1% for the quarter and 3.7% year-to-date.

Unit volumes for non-retail commodity meats decreased 12.8% in the fourth quarter but increased 8.7% for the year. In the third quarter of fiscal 2007, the corporation completed the shutdown of a single domestic pork slaughtering and meat production facility, but did not exit certain whole hog purchase contracts at this facility. Previously, portions of these hogs had been used in the corporation's production process and the remainder sold. Currently, the whole hogs are being sold to another slaughter operator, resulting in the increase in non-retail commodity unit volumes for the year, but lower overall non-retail commodity meat revenues due to the low sales price per unit for hogs.

\*\*   Adjusted net sales is a non-GAAP measure that excludes the impact of foreign currency exchange rates and acquisitions/divestitures. See pages 15 and 16 for a detailed explanation of this and other non-GAAP measures in this release.

Sara Lee Reports Solid Improvement in Underlying Operating Results for Fourth Quarter and Fiscal 2008 – Page 12

### Sara Lee Corporation
### Impact of Significant Items on Income from Continuing Operations and Net Income
### (In millions except per share data)

| | Twelve Months Ended June 28, 2008 | | | | Twelve Months Ended June 30, 2007 | | | |
|---|---|---|---|---|---|---|---|---|
| | Pretax Impact | Tax | Net Income | Diluted EPS Impact (1) | Pretax Impact | Tax | Net Income | Diluted EPS Impact (1) |
| **Income (loss) from continuing operations** | $ 137 | $(201) | $ (64) | $ (0.09) | $ 429 | $ 11 | $ 440 | $ 0.59 |
| **Net income (loss)** | | | $(102) | $ (0.14) | | | $ 504 | $ 0.68 |
| **Significant items affecting comparability of income (loss) from continuing operations and net income (loss):** | | | | | | | | |
| Charges for exit activities, asset and business dispositions: | | | | | | | | |
| Charges for exit activities | $ (39) | $ 14 | $ (25) | $ (0.03) | $(106) | $ 37 | $ (69) | $ (0.09) |
| (Charges for) income from business disposition activities | 1 | (1) | — | — | 12 | (2) | 10 | $ 0.01 |
| Subtotal | (38) | 13 | (25) | (0.03) | (94) | 35 | (59) | (0.08) |
| Charges in cost of sales: | | | | | | | | |
| Information technology costs | (8) | 3 | (5) | (0.01) | (10) | 4 | (6) | (0.01) |
| Accelerated depreciation | (1) | — | (1) | — | (31) | 12 | (19) | (0.03) |
| Charges in SG&A expenses: | | | | | | | | |
| Information technology costs | (40) | 14 | (26) | (0.04) | (42) | 15 | (27) | (0.04) |
| Transformation charges – other | (3) | 1 | (2) | — | (67) | 23 | (44) | (0.06) |
| Accelerated depreciation | — | — | — | — | (1) | — | (1) | — |
| Impairment charges | (874) | 24 | (850) | (1.19) | (172) | 27 | (145) | (0.19) |
| **Impact of significant items on income (loss) from continuing operations before income taxes** | (964) | 55 | (909) | (1.27) | (417) | 116 | (301) | (0.41) |
| **Significant tax matters affecting comparability (2):** | | | | | | | | |
| Tax benefit on disposition of a business | — | — | — | — | — | 169 | 169 | 0.23 |
| Deferred tax valuation allowance adjustment | — | 34 | 34 | 0.05 | — | (27) | (27) | (0.04) |
| Contingent tax obligation adjustment | — | 88 | 88 | 0.12 | — | 67 | 67 | 0.09 |
| Other tax adjustments | — | (1) | (1) | — | — | 2 | 2 | — |
| **Impact of significant items on income (loss) from continuing operations** | (964) | 176 | (788) | (1.10) | (417) | 327 | (90) | (0.13) |
| **Significant items impacting discontinued operations:** | | | | | | | | |
| Charges for exit activities and transformation expenses | (1) | — | (1) | — | (1) | — | (1) | — |
| U.K. pension settlement loss | (15) | — | (15) | (0.02) | — | — | — | — |
| (Loss)/ gain on disposition of discontinued operations, net | (23) | (1) | (24) | (0.03) | 5 | 11 | 16 | 0.02 |
| **Net impact of significant items on net income (loss)** | $(1,003) | $ 175 | $(828) | $ (1.16) | $(413) | $338 | $ (75) | $ (0.10) |

**Reconciliation of Diluted EPS from Continuing Operations to Adjusted EPS from Continuing Operations**

| | | |
|---|---|---|
| **Diluted EPS from continuing operations** | $  (0.09) | $   0.59 |
| Less: | | |
| Net impact of significant items on income from continuing operations | (1.10) | (0.13) |
| Tobacco sale proceeds | 0.18 | 0.16 |
| Add: | | |
| Subsidiary tax benefit – first quarter 2007 | — | 0.21 |
| **Adjusted EPS from continuing operations (1)** | $  0.83 | $  0.77 |

(1) EPS amounts are rounded to the nearest $0.01 and may not add to the total.

(2) In the fourth quarter of fiscal 2008, Sara Lee revised the presentation of the significant items table by eliminating certain tax benefits that, although discrete, are not unusual or infrequent in nature. In the current presentation of significant tax matters affecting comparability, the following annual amounts have been excluded from the full fiscal year presentation: $21 million ($.03 per share) from fiscal 2007 and $14 million ($.02) per share from fiscal 2008.

Sara Lee Reports Solid Improvement in Underlying Operating Results for Fourth Quarter and Fiscal 2008 – Page 13

### Sara Lee Corporation
### Impact of Significant Items on Income from Continuing Operations and Net Income
### (In millions except per share data)

| | Quarter Ended June 28, 2008 | | | | Quarter Ended June 30, 2007 | | | |
|---|---|---|---|---|---|---|---|---|
| | Pretax Impact | Tax | Net Income | Diluted EPS Impact (1) | Pretax Impact | Tax | Net Income | Diluted EPS Impact (1) |
| Income (loss) from continuing operations | $(552) | $(128) | $(680) | $(0.96) | $ 122 | $ (4) | $ 118 | $ 0.16 |
| Net income (loss) | | | $(695) | $(0.98) | | | $ 117 | $ 0.16 |
| Significant items affecting comparability of income (loss) from continuing operations and net income (loss): | | | | | | | | |
| Charges for exit activities, asset and business dispositions: | | | | | | | | |
| Charges for exit activities | $ (29) | $ 11 | $ (18) | $(0.02) | $ (21) | $ 8 | $ (13) | $(0.02) |
| (Charges for) income from business disposition activities | (1) | — | (1) | — | (4) | — | (4) | — |
| Subtotal | (30) | 11 | (19) | (0.03) | (25) | 8 | (17) | (0.02) |
| Charges in cost of sales: | | | | | | | | |
| Information technology costs | (1) | — | (1) | — | (4) | 2 | (2) | — |
| Accelerated depreciation | — | — | — | — | (2) | 1 | (1) | — |
| Charges in SG&A expenses: | | | | | | | | |
| Information technology costs | (10) | 3 | (7) | (0.01) | (9) | 3 | (6) | (0.01) |
| Transformation charges – other | — | — | — | — | (13) | 4 | (9) | (0.01) |
| Impairment charges | (874) | 24 | (850) | (1.20) | (16) | 6 | (10) | (0.01) |
| Impact of significant items on income (loss) from continuing operations before income taxes | (915) | 38 | (877) | (1.24) | (69) | 24 | (45) | (0.06) |
| Significant tax matters affecting comparability (2): | | | | | | | | |
| Deferred tax valuation allowance adjustment | — | (3) | (3) | — | — | — | — | — |
| Contingent tax obligation adjustment | — | 2 | 2 | — | — | 35 | 35 | 0.05 |
| Other tax adjustments | — | — | — | — | — | 5 | 5 | 0.01 |
| Impact of significant items on income (loss) from continuing operations | (915) | 37 | (878) | (1.24) | (69) | 64 | (5) | (0.01) |
| Significant items impacting discontinued operations: | | | | | | | | |
| Charges for exit activities and transformation expenses | — | — | — | — | (1) | — | (1) | — |
| U.K. pension settlement loss | (15) | — | (15) | (0.02) | — | — | — | — |
| (Loss)/gain on disposition of discontinued operations, net | — | — | — | — | (11) | 13 | 2 | — |
| Net impact of significant items on net income (loss) | $(930) | $ 37 | $(893) | $(1.26) | $ (81) | $ 77 | $ (4) | $(0.01) |

(1)  EPS amounts are rounded to the nearest $0.01 and may not add to the total.

(2)  In the fourth quarter of fiscal 2008, Sara Lee revised the presentation of the significant items table by eliminating certain tax benefits that, although discrete, are not unusual or infrequent in nature. In the current presentation of significant tax matters affecting comparability, the following annual amounts have been excluded from the full fiscal year presentation: $21 million ($.03 per share) from fiscal 2007 and $14 million ($.02 per share) from fiscal 2008.

Sara Lee Reports Solid Improvement in Underlying Operating Results for Fourth Quarter and Fiscal 2008 – Page 14

### Sara Lee Corporation and Subsidiaries
### Fiscal 2008 Tax Rate Reconciliation
### (In millions, except tax rate)

| | Quarter ended June 28, 2008 | | | |
|---|---|---|---|---|
| | Income (Loss) from Continuing Operations before Taxes | Tax Benefit (Expense) | Net Income (Loss) | Effective Tax Rate |
| **Reported Results** | $ (552) | $ (128) | $ (680) | (23.0)% |
| Less: Discrete tax items | — | (1) | (1) | (0.3)% |
| | (552) | (127) | (679) | (22.7)% |
| Less: Other significant items | (915) | 38 | (877) | (67.8)% |
| **Results, excluding significant items (1) (2)** | $ 363 | $ (165) | $ 198 | 45.1% |

| | Fiscal Year ended June 28, 2008 | | | |
|---|---|---|---|---|
| | Income from Continuing Operations before Taxes | Tax Benefit (Expense) | Net Income (Loss) | Effective Tax Rate |
| **Reported Results** | $ 137 | $ (201) | $ (64) | 146.7% |
| Less: Discrete tax items | — | 121 | 121 | (88.7)% |
| | 137 | (322) | (185) | 235.4% |
| Less: Other significant items | (964) | 55 | (909) | 201.2% |
| **Results, excluding significant items (1) (2)** | $ 1,101 | $ (377) | $ 724 | 34.2% |

(1)  Represents a non-GAAP financial measure. The following pages contain additional detail regarding these measures.

(2)  These line items do not exclude the impact of the company's receipt of tobacco sale proceeds and the related tax benefit. Sara Lee received one payment of tobacco sale proceeds this year, in the first fiscal quarter, and reflected the non-taxable nature of the payment in its determination of the 34.2% annual rate which it applied to pretax earnings in the fourth quarter. On an annual basis, the tobacco sale proceeds increased Sara Lee's diluted EPS by $.18 per share and provided 4.6 percentage points of tax benefit.

Sara Lee Reports Solid Improvement in Underlying Operating Results for Fourth Quarter and Fiscal 2008 – Page 15

**Explanation of Non-GAAP Financial Measures**

Management measures and reports Sara Lee's financial results in accordance with U.S. generally accepted accounting principles ("*GAAP*"). In this release, Sara Lee highlights certain items that have significantly impacted the corporation's financial results and uses several non-GAAP financial measures to help investors understand the financial impact of these significant items.

"*Significant items*" are income or charges that management believes have had or are likely to have a significant impact on the earnings of the applicable business segment or on the total corporation for the period in which the item is recognized, are not indicative of the company's core operating results and affect the comparability of underlying results from period to period. Significant items may include, but are not limited to, charges for exit activities, transformation costs, impairment charges and accelerated depreciation. Management highlights significant items to provide greater transparency into the underlying sales or profit trends of Sara Lee or the applicable business segment and to enable more meaningful comparability between financial results from period to period. Additionally, Sara Lee believes that investors desire to understand the impact of these factors to better project and assess the longer term trends and future financial performance of the corporation.

A "*discrete tax item*" constitutes a "*significant item*" that is an unusual or infrequently occurring item that is reflected in the reported tax rate in the quarter in which the item originates. Discrete tax items may include, but are not limited to, tax costs and benefits resulting from the disposition of a business, favorable or unfavorable resolution of open items based on the finalization of tax authority examinations and the tax impact of other significant items.

"*Subsidiary tax benefit*" consists of a $158 million tax benefit recognized by the company in the first quarter of fiscal 2007 from the sale of shares of a subsidiary. The subsidiary tax benefit was recognized entirely in the first quarter of fiscal 2007 and increased diluted EPS by $0.21 per share. The subsidiary tax benefit is identified separately in the fiscal 2007 comparative results because it was not generated by the company's underlying business and is a financially significant non-recurring benefit.

"*Tobacco sale proceeds*" consists of contingent sales proceeds from the sale of the company's tobacco business in fiscal 1999. Under the sales agreement, Sara Lee will receive cash payments annually, through July 15, 2009, if tobacco continues to be a legal product in the specified countries. Tobacco sale proceeds are identified separately because the income is not generated by the company's underlying business and has a finite term.

This release contains certain non-GAAP financial measures that exclude from a financial measure computed in accordance with GAAP the impact of the significant items, including discrete tax items, tobacco sale proceeds, the impact of acquisitions and divestitures and changes in currency exchange rates. Management believes that these non-GAAP financial measures reflect an additional way of viewing aspects of Sara Lee's business that, when viewed together with Sara Lee's financial results computed in accordance with GAAP, provide a more complete understanding of factors and trends affecting Sara Lee's historical financial performance and projected future operating results, greater transparency of underlying profit trends and greater comparability of results across periods. These non-GAAP financial measures are not intended to be a substitute for the comparable GAAP measures and should be read only in conjunction with our consolidated financial statements prepared in accordance with GAAP.

In addition, investors frequently have requested information from management regarding significant items and management believes, based on feedback it has received during earnings calls and discussions with investors, that these non-GAAP measures enhance investor's ability to assess Sara Lee's historical and project future financial performance. Management also uses certain of these non-GAAP financial measures, in conjunction with the GAAP financial measures, to understand, manage and evaluate our businesses, in planning for and forecasting financial results for future periods, and as one factor in determining incentive compensation. Many of the significant items will recur in future periods; however, the amount and frequency of each significant item varies from period to period.

Sara Lee Reports Solid Improvement in Underlying Operating Results for Fourth Quarter and Fiscal 2008 – Page 16

Management also has received inquiries from investors to better understand and project the corporation's tax rate, which can be complex given the multiple foreign jurisdictions in which Sara Lee operates and the numerous tax rules with which it must comply. The information contained in the table *"Fiscal 2008 Tax Rate Reconciliation,"* which includes certain non-GAAP financial measures, is intended to help investors better understand Sara Lee's effective tax rate.

The following is an explanation of the non-GAAP financial measures presented in this release.

Each of *"income (loss) from continuing operations before taxes, excluding significant items," "tax benefit (expense), excluding significant items" "net income (loss), excluding significant items"* and *"effective tax rate, excluding significant items"* excludes from the most directly comparable financial measure computed in accordance with GAAP the impact of significant items recognized in the fiscal period presented.

*"Adjusted EPS"* excludes from diluted EPS from continuing operations, as reported, the per share impact of tobacco sale proceeds and significant items, net, recognized in the fiscal period presented. With respect to fiscal 2007, Adjusted EPS also includes the per share impact of the subsidiary tax benefit.

*"Adjusted net sales"* excludes from net sales the impact of businesses acquired or divested after the start of the fiscal period and presents fiscal 2007 results at fiscal 2008 currency exchange rates.

*"Adjusted operating income"* excludes from the corporation's consolidated income from continuing operations before taxes the impact of significant items and businesses acquired or divested after the start of the fiscal period and presents fiscal 2007 results at fiscal 2008 currency exchange rates.

*"Adjusted operating segment income"* excludes from the pretax operating segment income from continuing operations of a specified business segment the impact of significant items recognized by that business segment during the fiscal period and businesses acquired or divested after the start of the fiscal period and presents fiscal 2007 results at fiscal 2008 currency exchange rates.

*"Adjusted operating margin"* is a non-GAAP financial measure that equals adjusted operating income divided by adjusted net sales of the corporation (in the case of computing adjusted operating margin for Sara Lee) or adjusted operating segment income for a business segment divided by adjusted net sales for that business segment (in the case of computing adjusted operating margin for a specific business segment).

*"Adjusted tax rate"* excludes from the reported tax rate the impact of the tobacco sale proceeds and significant items, net.

### Dates Referenced Herein  *and*  Documents Incorporated By Reference

| *This 8-K Filing* | *Date* | *Other Filings* |
|---|---|---|
| | ▼ | |
| | 6/30/07 | 10-K |
| | 6/28/08 | |
| | 6/29/08 | |
| | 7/22/08 | 8-K |
| Filed On / Filed As Of / For The Period Ended | 8/7/08 | |
| | 8/27/08 | |
| | 2/6/09 | |
| | 7/15/09 | |

Top                                                                List All Filings

Filing Submission  -  Alternative Formats (Word / Rich Text, HTML, Plain Text, SGML, XML, et al.)

Copyright © 2008 *Fran Finnegan & Company*  All Rights Reserved.
*www.secinfo.com - Thu, 21 Aug 2008 21:07:36.9 GMT - Privacy - Help*

# EXHIBIT D

*SEC Info*    Home    Search    My Interests    Help    Sign In    *Please **Sign In***

# Lee Sara Corp · 8-K · For 6/6/94 · EX-21

### Filed On 6/6/94 · SEC File 1-03344 · Accession Number 950124-94-1096

| Find | | in  this entire Filing. | Show  Docs searched | and  every "hit". |

Help...    *Wildcards:* **?** (any letter), **\*** (many). *Logic:* for Docs: **&** (and), **|** (or); for Text: **|** (anywhere), **"(&)"** (near).

| *As Of* | *Filer* | *Filing* | *On/For/As* | *Docs:Pgs* |
|---------|---------|----------|-------------|------------|
| 6/06/94 | Lee Sara Corp | **8-K**{5,7} | 6/06/94 | 2:6 |

---

### Current Report · Form 8-K
### Filing Table of Contents

| *Document/Exhibit* | *Description* | *Pages* | *Size* |
|--------------------|---------------|---------|--------|
| 1: 8-K | Form 8-K Dated 6/6/94 | 4 | 9K |
| 2: EX-21 | Press Release Issued 6/6/94 | 2 | 11K |

---

### EX-21 · Press Release Issued 6/6/94

| EX-21 | 1st Page of 2 | TOC | Top | Previous | Next | Bottom | Just 1st |

**SARA LEE CORPORATION NEWS**

Release Date                                    Three First National Plaza
                                                Chicago, Illinois  60602-4260
**FOR IMMEDIATE RELEASE**

Contact
**ANNE M. MCCARTHY (MEDIA)**              **LYNN L. MCHUGH (ANALYSTS)**
1 312 558 8727                           1 312 558 8464

SARA LEE CORPORATION ANNOUNCES WORLDWIDE PROGRAM
TO IMPROVE PRODUCTIVITY AND RETURNS, REDUCE COSTS
-- will take $495 million fourth quarter after-tax charge
to cover restructuring actions --

CHICAGO, (June 6, 1994) -- Sara Lee Corporation today announced a worldwide
program to enhance the company's overall efficiency, productivity and
competitiveness in a changing global marketplace.  Elements of the plan are
designed to accelerate the achievement of higher returns and lower costs in
targeted businesses, thus improving future growth and profitability.
        "At a time when Sara Lee is strong and on course for another record
year, we must intensify our focus on our basic business strategies, including
building our worldwide brands and strengthening our ties to consumers.  We must
also accelerate our efforts to ensure that our manufacturing and distribution
systems operate to produce and market the highest quality products at the
lowest possible cost," said John H. Bryan, chairman and chief executive
officer.  "Our ability to remain a growth company, competing effectively in
rapidly changing markets, both today and in the future, requires these actions."
        The restructuring plan will result in a fiscal 1994 fourth quarter
charge of $732 million before tax.  This is the equivalent of $495 million
after tax or $1.03 per share.  The company expects full-year results for fiscal
1994, to be announced on or about August 8, to reflect record sales and
earnings, excluding the effects of any unusual charges or accounting changes.
Results for the fourth quarter, to be announced on the same date, are
anticipated to be in line with current analyst expectations, excluding the
restructuring charge.

- more -

| **EX-21** | **Last Page of 2** | TOC | 1st | Previous | Next | Bottom | Just 2nd |

Sara Lee Corporation
Page 2

        The restructuring plan announced today will involve all four of the
company's lines of business, although the majority of the charge is related to
worldwide segments of the Personal Products operations.  The charge
incorporates severance for approximately 6% of the corporation's current
worldwide work force.  The restructuring charge also involves the closing,
consolidation and realignment of production and distribution facilities
throughout the world.
        The company expects the restructuring plan to begin lowering operating
costs in fiscal 1995 and to generate increasing savings in subsequent years,
growing to an annual savings of approximately $250 million beginning in fiscal
1998.  Savings from the planned actions will be used for both business-building
initiatives and for profit improvement.
        *"While Sara Lee will continue to make carefully targeted investments in
our businesses, we will adhere to strict return parameters to ensure that all
of our operations achieve appropriate levels of profitability,"* said Mr. Bryan.
        Details of work force reduction and identification of facilities for
closure or consolidation will be announced after implementation steps have been
developed in collaboration with affected employees and communities.  The
corporation will continue its historic practice of providing severance and
benefit packages, as well as providing a comprehensive job replacement and
employee assistance program.
        *"The actions we are implementing through this plan will keep Sara Lee
Corporation in the forefront of vital, growing, U.S.-based global companies
with flexible, efficient production, distribution and management organizations
that are responsive to the dictates of a changing marketplace,"* Mr. Bryan
concluded.
        Sara Lee Corporation is a global food and consumer products company with
138,000 employees throughout the world at the end of fiscal 1993.  The
corporation markets a variety of products under leading brand names including
Hanes, Hanes Her Way, L'eggs, Bali, Champion, Playtex, Dim, Kiwi, Hillshire
Farm, Ball Park, Jimmy Dean, Douwe Egberts and Sara Lee.

                                  ***

## Dates Referenced Herein  *and*  Documents Incorporated By Reference

| *This 8-K Filing* | *Date* | *Referenced-On Page* | | *Other Filings* |
| | | *First* | *Last* | |
|---|---|---|---|---|
| Filed On / Filed As Of / For The Period Ended | 6/6/94 | 1 | | |

Top                                                                          List All Filings

Filing Submission  -  Alternative Formats (Word / Rich Text, HTML, Plain Text, SGML, XML, et al.)

*Copyright © 2008 **Fran Finnegan & Company**  All Rights Reserved.*
*www.secinfo.com - Mon, 25 Aug 2008 14:28:31.1 GMT - Privacy - Help*